IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ERIC CHARLES RODNEY K'NAPP,            No. CIV S-05-2520-FCD-CMK-P

        Plaintiff,

    vs.                                     FINDINGS AND RECOMMENDATIONS

RODERICK HICKMAN, et al.,

        Defendants.

_____/

        Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court are defendants' motions to dismiss and joinders thereto (Docs. 98, 114, 120, 131).[1]

///

///

---

[1] Plaintiff filed a supplemental opposition (Doc. 136) to defendants' motions. Defendants filed a motion to strike (Doc. 143) plaintiff's supplemental opposition. That request should be denied because defendants are not prejudiced by plaintiff's supplemental opposition. Specifically, the court granted defendants an extension of time (Doc. 142) to respond to the supplemental opposition. Therefore, defendants have had a chance to respond to the merits of any arguments raised in that pleading. In this regard, defendants' motion for an extension of time, nunc pro tunc, of one day (Doc. 147) to make their supplemental reply brief timely should be granted.

## I. BACKGROUND

This action proceeds on the third amended complaint (Doc. 39) filed on December 1, 2006. Plaintiff names the following individuals as defendants: Hickman, Ali, Boyd, C. Brown, D. Brown, M. Brown, Broyles, Campbell, Carrillo, Cherry, Clevenstine, Danzinger, Doherty, Emigh, Etheredge, Fowler, Gentile, Grannis, Gray, Gunning, Gutierrez, Hansen, Hein, Henderson, Hensley, Hogan, Hurdle, Kaiser, Kanipe, Keeland, Kernan, King, Klinefelter, Knipp, Knowles, Kudlata, Laguna, Lattimore, Leeworthy, Lincoln, Marshall, McNeil, Melching, Mesa, Murray, Mynhier, Nelson, O'Connor, Olsen, Poe, Presley, Reaves, Rendon, Reyes, Rianda, Robinson, Sauceda, Seinwerth, Silva, Smith, Stanley, Stewart, Subia, Taylor, Uribe, Vasconcellos, Vasquez, Warren, Warvarovski, White, and Whittle.[2]

Plaintiff asserts 12 separate claims, many of which have sub-claims. He alleges the following general background facts:

> Plaintiff . . . is a prisoner within the California Department of Corrections and Rehabilitation ("CDCR"). He is also a plaintiff class member of Coleman v. Schwarzenegger, 912 F. Supp. 1282 (E.D. Cal. 1995), and Armstrong v. Schwarzenegger, 124 F.3d 1019 (9th Cir. 1997). He has been a patient in the CDCR's Mental Health Services Delivery System since 1996 with a consistent diagnosis of Post-Traumatic Stress Disorder and related conditions resulting from severe physical and psychological trauma he survived upon entering the prison system in 1994 as a former state peace officer and federal military police sergeant wrongly convicted of sexually assaulting a woman who has since come forward and admitted that she lied against him. Accordingly, he was specially

---

[2] Defendant White has been dismissed by order issued on June 13, 2007 (Doc. 97). Plaintiff filed a document conceding to voluntary dismissal of unserved defendants Gunning, Marshall, and Murray (Doc. 128). The court, however, construed that filing as a request for assistance and has directed the United States Marshal to attempt to locate these individuals (see Doc. 133). Defendant Warvarovski also remains unserved. The court will continue to monitor for service of these four defendants.

As to defendants Reyes and Reaves, they both filed waivers of service on April 3, 2007 (Doc. 69). On June 26, 2007, a number of defendants filed a motion to dismiss (Doc. 98). Listed as a moving defendant was "Reayes" even though no such individual is named in the third amended complaint or has waived service. The court asked the defendants for clarification as to which of these defendants had appeared. In their response (Doc. 119), defendants clarified that both defendants Reyes and Reaves have appeared and that the motion to dismiss (Doc. 98) was filed on behalf of both of these defendants as well as numerous others.

All other defendants have appeared in the action.

transferred to Mule Creek State Prison . . . at the beginning of 1999 specifically for the purpose of facilitating his mental health condition . . . so he could be visited on a regular and frequent basis by his physically disabled mother and other loved ones residing in that area.

Plaintiff's mother is director of a prison watchdog group called United for No Injustice, Oppression, Neglect ("UNION"). Since 1998, Plaintiff's mother has worked through UNION to educate, organize, and thus empower the family members and friends of California state prisoners to more effectively advocate against the mistreatment of prisoners and corruption plaguing the California prison system.

Following Plaintiff's arrival at MCSP, especially beginning in the month of June 2000, Plaintiff, his activist mother, and their respective associates both in and out of prison lawfully exercised protected rights under the U.S. Constitution's 1st Amendment by speaking freely, peaceably associating and assembling toward a common good, and accessing available press, media, government officials, and courts to report, seek redress of, and otherwise publicly expose and denounce injustice, oppression, neglect, and other abuse of Plaintiff and other CDCR prisoners, particularly at MCSP.

Plaintiff asserts 12 separate claims, each with numerous sub-claims, alleging acts of retaliation by defendants because plaintiff engaged in the following activities: (1) petitioned for redress of grievances; (2) associated with others; (3) assembled with others; (4) spoke freely; and (5) communicated through confidential mail. He asserts the following specific acts of retaliation: (1) confiscation and destruction of personal property; (2) unreasonable confiscation of mail; (3) frequent cell searches; and (4) nude body inspections. Plaintiff specifically states that he is complaining of specific acts which are part of a "3-year campaign of retaliatory abuse" and that this campaign continues "unabated."

Plaintiff's complaint also asserts Eighth Amendment violations based on the following claims related to conditions of confinement while plaintiff was housed in administrative segregation between September 2000 and September 2001: (1) endangerment of personal safety; (2) intentional and/or negligent infliction of emotional anguish; (3) denial of clothing and/or warmth; (4) denial of sanitary conditions; (5) deliberate indifference toward known mental conditions; (6) deprivation of prescribed therapy and treatment; (7) excessive force; (8) denial of food; (9) experimental drugging; and (10) coercion, duress, and menace causing mental harm.

In its December 13, 2006, order determining that service of the third amended complaint was appropriate for the named defendants, the court stated:

> . . . The gist of his complaint is that defendants at Mule Creek State Prison (MCSP) have retaliated against him for complaining about staff misconduct and working to improve prison conditions. Plaintiff alleges that defendants interfered with his prison grievances, interfered with his right to visitation, confiscated materials from a bulletin board, forced him to resign from the Men's Advisory Council, and forced other prisoners to deface a mural that plaintiff had painted. Finally, plaintiff alleges that his constitutional rights were violated by deplorable living conditions which he suffered during three separate placements in administrative segregation and by being served contaminated food.
> Plaintiff's claims concerning the conditions he alleged[ly] encountered in Administrative Segregation and his claims that he was served contaminated food state cognizable claims for relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915A(b). By themselves, the claims that defendants interfered with his prison grievances, interfered with his right to visitation, confiscated materials from a bulletin board, forced him to resign from the Men's Advisory Council, and forced other prisoners to deface a mural that plaintiff had painted do not state cognizable civil rights claims. However, to the extent that plaintiff alleges that the defendants engaged in the above-described actions as part of ongoing retaliatory conduct stemming from plaintiff's filing of a grievance (a constitutionally protected activity) concerning an incident in 2000, plaintiff does state a cognizable retaliation claim against defendants.

## II. STANDARDS FOR MOTION TO DISMISS

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In considering a motion to dismiss under this standard, the court must accept all allegations of material fact as true. See Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197 (June 4, 2007). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved

in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). Pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1956, 1965 (2007). Allegations of specific facts are not necessary so long as the statement of facts gives the defendant fair notice of what the claim is and the grounds upon which it rests. See Erickson, 127 S.Ct. at 2197.

To determine whether a complaint states a claim upon which relief can be granted, the court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily lies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994), except prison regulations, see Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).

Under these standards, a statute of limitations defense may be raised in a motion to dismiss. Leave to amend a deficient complaint must be granted ". . . [u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corrections, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

/ / /

/ / /

### III. DISCUSSION

In their motions to dismiss, defendants raise the following arguments:

1. Plaintiff lacks standing with respect to certain allegations;

2. Plaintiff's claims of retaliation asserted in Claims 1, 2, 3, 4, 5, and 7 are time-barred and the ongoing violation doctrine does not apply;

3. Even if the ongoing violation doctrine applies, some defendants must be dismissed because the doctrine does not preserve distinct claims against defendants that are not linked to violations occurring within the limitations period;

4. Plaintiff's Eighth Amendment claims relating to his confinement in administrative segregation between September 2000 and September 2001 are time-barred;

5. Claim 8m must be dismissed because it relates only to the impact from past violations;

6. Allegations relating to mail from the courts and public officials do not state a First Amendment claim based on interference with legal mail;

7. Allegations of verbal harassment are not actionable;

8. Certain defendants must be dismissed because plaintiff's claims against them are based solely on the prison grievance process;

9. Certain defendants must be dismissed because plaintiff fails to allege a causal link between them and any cognizable claim; and

10. Defendants Gray and Vasconcellos should be dismissed due to: (1) Eleventh Amendment immunity; (b) legislative immunity; and/or (c) failure to state a claim.

**A.   <u>Standing</u>**

Defendants argue that they are entitled to dismissal of "all portions of the complaint containing allegations of retaliation against and injuries suffered by persons other than K'napp, because he lacks standing to assert these claims." As defendants note, plaintiff's third amended complaint is replete with allegations regarding injuries suffered by plaintiff's fiancé and "associates." The court agrees with defendants that plaintiff lacks standing to assert damage claims based on these allegations because he must allege claims relating to his own injuries, not the injuries suffered by others. See <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992);

see also Hale v. Wend Inv. Co., 672 F.2d 1305, 1308 (9th Cir. 1982).

In opposition, plaintiff cites Kowalski v. Tesmer, 543 U.S. 125 (2004), for the proposition that he may invoke third party standing to asserts the claims of others. The court finds, however, that Kowalski does not apply in this case. In Kowalski, the Supreme Court stated that third party standing is only available when "there is a 'hindrance' to the possessor's ability to protect his own interests." Id. at 130 (citing Powers v. Ohio, 499 U.S. 400, 411 (1991)). In general, however, the Court does not look favorably on the concept of third party standing. See id. In this case, there is no indication that plaintiff's fiancé and "associates" cannot assert their own rights to the extent they have been violated by defendants' conduct. Therefore, the court declines to confer third party standing in this case. This case cannot proceed as to any allegations asserting damages by parties other than plaintiff. This case may only proceed with respect to plaintiff's own alleged injuries.

### B. Statute of Limitations

For claims brought under 42 U.S.C. § 1983, the applicable statute of limitations is California's statute of limitations for personal injury actions. See Wallace v. Kato, 127 S.Ct. 1091, 1094-95 (2006); Wilson v. Garcia, 471 U.S. 261, 280 (1985); Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988). State tolling statutes also apply to § 1983 actions. See Elliott v. City of Union City, 25 F.3d 800, 802 (citing Hardin v. Straub, 490 U.S. 536, 543-44 (1998)).

Before January 1, 2003, the statute of limitations for personal injury actions was one year. See Cal. Code Civ. Proc. § 340(3); see also Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999) (citing Elliott, 25 F.3d at 802, and applying the one-year limitation period specified in § 340(3)). The personal injury statute of limitation was extended by passage of California Code of Civil Procedure § 335.1 to two years, effective January 1, 2003. See Canatella v. Van De Kamp, 486 F.3d 1128, 1132 (9th Cir. 2007) (citing Cal. Code Civ. Proc. § 335.1). The extension of this statute of limitations, however, does not apply retroactively to claims which were already

1 barred under one-year limitation period specified in § 340(3), plus any statutory tolling, as of the
2 effective date of January 1, 2003. See id. at 955 (citing Douglas Aircraft v. Cranston, 58 Cal.2d
3 462 (1962)).

4    At the time Elliott was decided – 1994 – California Code of Civil Procedure
5 § 352(a)(3) provided tolling of the statute of limitations when the plaintiff is "[i]mprisoned on a
6 criminal charge, or in execution under sentence of a criminal court for a term of less than for
7 life." That tolling, however, only applies if the disability of incarceration existed at the time the
8 claim accrued. See Elliott, 25 F.3d at 802 (citing Cal. Code Civ. Proc. § 357). Pre-conviction
9 incarceration qualifies. See id. By the time Fink was decided – 1999 – the California tolling
10 provision for the disability of incarceration had been amended. Specifically, California Code of
11 Civil Procedure § 352.1, which became effective January 1, 1995, provides prisoners with only
12 two years of tolling. See Fink, 192 F.3d at 914. Prior to the effective date of § 352.1, prisoners
13 enjoyed tolling for the entire time of sentences less than life. See id. The Ninth Circuit in Fink
14 concluded that § 352.1 applies retroactively. See id. at 915. Thus, for § 1983 claims which
15 accrued before January 1, 1995, the running of the statute of limitations is tolled for two years, or
16 until January 1, 1997, whichever is later. See Fink, 192 F.3d at 916.

17    Defendants raise three related arguments regarding the statue of limitations. First,
18 they argue that the retaliation claims set forth in Claims 1, 2, 3, 4, 5, and 7 are all time-barred
19 because they relate to events occurring more than four years prior to the date this action was filed
20 and the continuing violation doctrine does not apply. Second, they argue that, even if the
21 continuing violation doctrine applies to his retaliation claims, the doctrine does not preserve
22 claims against specific defendants against whom conduct is not alleged to have occurred within
23 the limitations period. And third, defendants argue that plaintiff's Eighth Amendment claims are
24 barred because they relate to the conditions of his confinement in administrative segregation
25 between September 2000 and September 2001, which are dates more than four years before this
26 action was filed.

1.  Retaliation Claims

In this case, Claims 1, 2, 3, 4, 5, and 7 describe retaliatory events which occurred between June 2000 and October 2001. As of January 1, 2003 – the date the statute of limitations was extended to two years – none of these claims would have been time-barred under the one-year statute of limitations, plus two years tolling due to plaintiff's incarceration. Therefore, plaintiff is entitled to the benefit of the extended statute of limitations and his claims would be barred if not filed within four years of their accrual dates (two-year statute of limitations plus two years tolling). Defendants agree that a four-year time limit applies and argue that, because plaintiff's action was not filed until December 2005, these six claims are time-barred.

In his opposition, plaintiff contends that the continuing violation doctrine applies such that the conduct complained of in Claims 1, 2, 3, 4, 5, and 7 relates to conduct alleged in other claims which was within the limitations period based on his December 2005 filing date. Defendants argue the continuing violation doctrine does not apply because plaintiff's claim asserts "twelve separate [retaliation] claims, each based on different allegedly protected acts." They also argue that it should not matter that plaintiff, in his opposition, attempts to save his claims by presenting a self-serving argument that these alleged violations are all related and ongoing. Defendants state that the allegations in the complaint should control.

In cases where the plaintiff alleges ongoing violations, claims outside the limitations period which relate to claims within the limitations period may nonetheless be actionable under the continuing violation doctrine. In an employment discrimination case, the Supreme Court stated that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002). However, where the plaintiff asserts claims resulting from an alleged ongoing policy of discrimination, the continuing violation doctrine applies. See Gutowsky v. County of Placer, 108 F.3d 256, 259-60 (9th Cir. 1997). In Gutowsky, the plaintiff had alleged "that the widespread policy and practices of discrimination of which she complains

continued every day of her employment, including days that fall within the limitation period." Id. at 260. Thus, there needs to be an allegation that the specific acts alleged are instances of some broader policy. See id.; see also Cholla Ready Mix Co. v. Civish, 382 F.3d 969, 974-5 (9th Cir. 2004) (citing Morgan, 536 U.S. at 113-14).

Defendants are correct that the allegations in the complaint govern this court's analysis. However, they are not correct that plaintiff's complaint does not allege ongoing violations. While plaintiff does in fact sort his allegations into 12 separate claims, he also specifically alleges ongoing violations as the result of a "campaign" or policy of retaliation that persists "unabated." These are not merely self-serving statements in opposition to defendants' motion to dismiss. Rather, they are allegations in the third amended complaint. Plaintiff repeats these allegations in each claim. For example, in Claim 1, plaintiff alleges an "oppressive campaign of retaliatory abuse," and in Claim 2, plaintiff alleges a "campaign of retaliatory oppression." In Claim 3, plaintiff alleges that this "campaign" alleged in Claims 1 and 2 continued to "progress" against plaintiff as set forth in the sub-parts of Claim 3. In Claim 4, plaintiff states that defendants caused the "campaign of retaliatory oppression alleged above at Claim 1–3 to continue unabated. . . ." Plaintiff sets forth similar allegations in each of his 12 claims. Moreover, as the court in Cholla Ready Mix noted, acts occurring outside the limitations period are relevant background material in support of claims within the limitations period. See 382 F.3d at 975. Therefore, the continuing violation doctrine applies and the claims are not barred.

The court next turns to defendants' argument that, notwithstanding the continuing violation doctrine, certain defendants against whom conduct is not alleged to have occurred within the limitations period must nonetheless be dismissed. Essentially, defendants argue that, while plaintiff's retaliation claims might be preserved by the continuing violation doctrine, such claims against specific defendants are not preserved unless plaintiff alleges conduct against them within the limitations period. Specifically, defendants argue that M. Brown, Broyles,

Clevenstine, Hensley, Knipp, Leeworthy, McNeil, Reaves, Robinson, and Stanely must be dismissed under this theory.  The court agrees with defendants' legal premise, noting that the Supreme Court in <u>Morgan</u> applied the continuing violation doctrine to preserve the alleged pattern of discriminatory conduct created by the same defendant.  See <u>Morgan</u>, 536 U.S. at 113-14.  The question, then, is whether defendants are correct that all of plaintiff's allegations against M. Brown, Broyles, Clevenstine, Hensley, Knipp, Leeworthy, McNeil, Reaves, Robinson, and Stanely fall outside the limitations period (i.e., before December 12, 2001 – four years prior to the date this action was filed).  In other words, the question is whether plaintiff alleges conduct against these individuals occurring <u>after</u> December 12, 2001.

Claims 1, 2, 3, 4, 5, and 7 all allege conduct prior to December 12, 2001.  As to the remaining claims, the dates and defendants involved are summarized as follows:

| | | |
|---|---|---|
| <u>Claim 6</u> | Dates: | Between October 3, 2001, and March 3, 2002. |
| | Defendants (as to dates after December 12, 2001, only):  Gray, Hurdle, Kernan, Knowles, Vasconcellos, Warren, and White. | |
| <u>Claim 8</u> | Dates: | Between May 29, 2002, and December 13, 2002. |
| | Defendants:  Hickman, Kaiser, King, Knowles, Laguna, Mynhier, Sulva, Vasquez, Warren, Vasconcellos, White, Hurdle, Smith, Murray, Gutierrez, Reyes, Gunning, Hansen, Etheredge, Kernan, Lattimore, Olsen, Silva, Boyd, D. Brown, Hansen, Presley, Uribe, Grannis, Rianda, Hogan, Ali, and O'Connor. | |
| <u>Claim 9</u> | Dates: | Between January 7, 2003, and January 12, 2003. |
| | Defendants:   Gray, Hickman, Hurdle, Knowles, Presley, Vasconcellos, White, Etheredge, Gentile, Gutierrez, Warren, Kernan, Sauceda, and Seinwerth | |
| <u>Claim 10</u> | Dates: | Between January 17, 2003, and April 29, 2003. |
| | Defendants:  Gray, Hogan, Hurdle, Knowles, Presley, Rianda, Vasconcellos, Warren, White, Subia, Doherty, Etheredge, Gentile, Gutierrez, Kaiser, Lattimore, Mesa, Hein, Henderson, Keeland, Kernan, Silva, Boyd, Klinefelter, Sauceda, Seinwerth, Warvarovski, Grannis, Kudlata, Poe, Carrillo, Danzinger, Fowler, Stewart, Cherry, Kanipe, and Taylor | |

///

|   |   |   |
|---|---|---|
| Claim 11 | Dates: | Between January 26, 2001, and April 15, 2003. |
|  | Defendants (as to dates after December 12, 2001, only): Gray, Hurdle, Hernan, Knowles, Presley, Reyes, Subia, Vasconcellos, White, Campbell, Grannis, and Hansen | |
| Claim 12 | Dates: | Between July 8, 2003, and September 15, 2003. |
|  | Defendants: Grannis, Gray, Gutierrez, Hansen, Hurdle, Knowles, Lattimore, Presley, Vasconcellos, Kernan, Reyes, Subia, Campbell, and White. | |

Defendants are correct that M. Brown, Broyles, Clevenstine, Hensley, Knipp, Leeworthy, McNeil, Reaves, Robinson, and Stanely are not named with respect to any conduct alleged to have occurred within the limitations period. At best, plaintiff's allegations against these individuals refer to conduct occurring more than four years before this action was filed. Therefore, they should be dismissed because plaintiff's retaliation claims <u>as against them</u> are time-barred and plaintiff has not alleged that <u>these defendants</u> participated in continuing violations ongoing within the limitations period.

          2.     <u>Eighth Amendment Claims</u>

The court's conclusion regarding the applicability of the continuing violation doctrine, however, is different as to plaintiff's discrete Eighth Amendment conditions of confinement claims. Specifically, plaintiff alleges various violations relating to the conditions of his confinement in administrative segregation between September 2000 and September 2001. Because his allegations of ongoing violations only relate to the "campaign of retaliatory oppression," the continuing violation doctrine cannot save his stand-alone Eighth Amendment claims from the statute of limitations. Because all of the conditions of confinement claims relate to times more than four years prior to the date this action was filed, they are barred. This is not to say, however, that the allegations do not provide background material relating to plaintiff's retaliation claims. Plaintiff may not, however, recover damages in this lawsuit based solely on the conditions of his confinement in administrative segregation between September 2000 and September 2001.

### C. Claim 8m

In Claim 8m, plaintiff alleges:

> By 11/21/02, all defendants thus far named herein at Counts 1a-8l jointly caused Plaintiff's mental health to be so badly eroded because of the retaliatory campaign of oppression – which included so many inflictions of mental abuse & cruelty alleged herein – that he required psychotropic medication for relief from all the resulting stress, anxiety, depression, & suicidal thoughts he was suffering.

Defendants argue that this claim must be dismissed because it relates only to plaintiff's allegations that a past violation resulted in continuing damage. Defendants are correct that the mere continuing impact alone from a past violation is not actionable under the continuing violation doctrine. See Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001). However, that case discussed the time of accrual of a claim under the continuing violation doctrine. It does not foreclose the allegations at Claim 8m representing plaintiff's statement of the damages suffered. Therefore, the court finds that, while Claim 8m does not state a stand-alone basis for liability, it nonetheless constitutes part of plaintiff's allegations concerning the damages he suffered as a result of the retaliatory conduct complained of elsewhere in the complaint.

### D. Plaintiff's Mail

Defendants note that certain of plaintiff's sub-claims within Claim 11 relate to prison mail. They argue that, because plaintiff has not alleged any improper interference with his legal mail, he cannot state a First Amendment claim based on prison officials opening his mail. Prisoners have a First Amendment right to send and receive mail. See Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). Prison officials may intercept and censor outgoing mail concerning escape plans, proposed criminal activity, or encoded messages. See Procunier v. Martinez, 416 U.S. 396, 413 (1974); see also Witherow, 52 F.3d at 266. Based on security concerns, officials may also prohibit correspondence between inmates. See Turner v. Safley, 482 U.S. 78, 93 (1987). Prison officials may not, however, review outgoing legal mail for legal sufficiency before sending them to the court. See Ex Parte Hull, 312 U.S. 546, 549 (1941).

Incoming mail from the courts, as opposed to mail from the prisoner's attorney, for example, is not considered "legal mail."  See Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998).

The court agrees with defendants that plaintiff has not alleged any stand-alone First Amendment claim concerning legal mail.  Specifically, his mail allegations relate to mail from plaintiff's mother.  However, as should be clear from the court's discussion above, this case presents cognizable retaliation claims only.  Plaintiff's allegations at Claim 11, therefore, are considered descriptions of acts of retaliation.  In other words, plaintiff asserts that, in retaliation, defendants confiscated incoming mail from his mother.

### E. Verbal Harassment

As with their argument concerning plaintiff's mail allegations, defendants argue that plaintiff cannot state a stand-alone claim based on verbal harassment.  Again, the court agrees.  Allegations of verbal harassment do not state a claim under the Eighth Amendment.  See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987); see also Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998).  Plaintiff's allegations concerning acts of harassment, however, represent instances of claimed retaliatory conduct.

### F. Prison Grievance Process

Next, defendants argue that plaintiff cannot proceed with a stand-alone claim based on the prison grievance process because he has no constitutional right in such a process.  Again, defendants are correct.  See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  However, as stated above, this case is about retaliation.  Plaintiff is not claiming that his constitutional rights were violated with respect to the prison grievance process.  Rather, he asserts that defendants' alleged interference with his grievances constitute discrete acts of retaliation.  As such, the allegations relate to his retaliation claims.

///

///

### G. Causal Link

Defendants argue that plaintiff has not alleged a causal link between a violation of his civil rights and the following individuals: M. Brown, Campbell, Carillo, Cherry, Doherty, Gentile, Henderson, Klinefelter, Olsen, Seinwerth, D. Brown, Knipp, Kudlata, Laguna, Lincoln, Rendon, Reyes, Subia, Mynhier, Boyd, Kernan, Silva, Hickman, Knowles, Emigh, Gannis, Hansen, Hurdle, Melching, Presley, Reaves, Rianda, Taylor, and Uribe.[3] Specifically, defendants contend that plaintiff "offers no facts supporting his allegation that retaliation motivated their behavior." The court has addressed the causal link required under 42 U.S.C. § 1983 in prior orders. In the court's February 27, 2006, order dismissing the original complaint with leave to amend, the court stated:

> . . . There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th cir. 1978).

As to the original complaint, the court observed:

> Plaintiff's complaint contains fifty counts against defendants and is one-hundred three pages long. The events described in the complaint do not allege a specific violation of plaintiff's civil rights by defendants. Instead, plaintiff's complaint is more akin to a narrative of wrong doing by prison officials and state officers. . . .

In addressing plaintiff's second amended complaint on July 21, 2006, the court stated:

> If prison officials retaliate against an inmate for the exercise of his constitutional rights, the prisoner may have a viable claim under the civil rights act. See Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (stating that the elements of a retaliation claim are (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that inmate's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights and (5) the action did not reasonably advance a legitimate correctional goal). Here, however, plaintiff makes vague allegations of retaliation; he does not address the basis or nature of defendants' retaliatory acts or clearly state which defendants were specifically involved in the retaliation.

---

[3] Presumably, the other named defendants concede that plaintiff <u>has</u> alleged a causal link to his retaliation claims.

Plaintiff was given an opportunity to amend, which resulted in the filing of the third amended complaint presently before the court and which the court determined appeared to state cognizable claims for relief and was appropriate for service.[4]

After thoroughly reviewing the third amended complaint with respect to plaintiff's references to defendants Campbell, Carillo, Cherry, Doherty, Gentile, Henderson, Klinefelter, Olsen, Seinwerth, D. Brown, Kudlata, Laguna, Lincoln, Rendon, Reyes, Subia, Mynhier, Boyd, Kernan, Silva, Hickman, Knowles, Emigh, Gannis, Hansen, Hurdle, Melching, Presley, Rianda, Taylor, and Uribe,[5] the court concludes that plaintiff has not alleged sufficient facts to establish the required causal link. Specifically, plaintiff has not alleged how each of these individuals acted to retaliate against plaintiff. Instead, plaintiff's allegations are vague. For example, in Claim 1g, plaintiff alleges that defendants Hickman, Hurdle, and Reyes "jointly caused Plaintiff . . . to further suffer unauthorized visit terminations. . . ." He has not, however, alleged with any specificity what these defendants actually did that resulted in the visit terminations. It is not enough just to say that defendants "caused" something to happen. Plaintiff must allege facts regarding the specific conduct of each defendant. In other words, regarding the example above, plaintiff must allege precisely what defendants Hickman, Hurdle, and Reyes did to terminate visits. Did they sign an order? Did they turn visitors away? Did they prevent plaintiff from leaving his cell to meet with visitors? Because of plaintiff's vague causal allegations, the court and defendants are left to guess as to the factual basis of liability.

/ / /

/ / /

/ / /

---

[4] The court did not specifically conclude that plaintiff had stated cognizable claims as against each named defendant.

[5] The court has not examined the allegations as to M. Brown, Knipp, and Reaves because, as discussed above, plaintiff's claims against these defendants are time-barred.

1   The court finds that plaintiff is not entitled to further leave to amend.  Plaintiff has
2  been advised of the causal link requirements on numerous previous occasions and has had ample
3  opportunity to plead sufficiently specific facts.  It appears that plaintiff is either unable or
4  unwilling to adequately plead a causal connection to defendants M. Brown, Campbell, Carillo,
5  Cherry, Doherty, Gentile, Henderson, Klinefelter, Olsen, Seinwerth, D. Brown, Knipp, Kudlata,
6  Laguna, Lincoln, Rendon, Reyes, Subia, Mynhier, Boyd, Kernan, Silva, Hickman, Knowles,
7  Emigh, Gannis, Hansen, Hurdle, Melching, Presley, Reaves, Rianda, Taylor, and Uribe.  At some
8  point, this action must proceed to a stage where there is an answer on file from all defendants and
9  a scheduling order can be issued.  This case has been pending for two years and that time has
10  now come.  Therefore, the court finds that further leave to amend is not warranted.

   **H.   Defendants Gray and Vasconcellos**

12   In their separate motion to dismiss, defendants Gray and Vasconcellos, argue that
13  they should be dismissed from this action.  Defendant Vasconcellos is a state senator and
14  defendant Gray is his legislative aide.  Plaintiff alleges that they are liable as a result of their roles
15  on a state senate prison oversight committee.  The court agrees with defendants Vasconcellos and
16  Gray that they are entitled to legislative immunity with respect to the conduct alleged in the
17  complaint.  See Bogan v. Scott-Harris, 523 U.S. 44, 46 (1998); Tenny v. Brandlove, 341 U.S.
18  367, 372 (1951).  Therefore, these defendants should be dismissed with prejudice.

   **IV.  UNSERVED DEFENDANTS**

21   Finally, the court addresses the four unserved defendants – Warvarovski,
22  Gunning, Marshall, and Murray.  As to Gunning, Marshall, and Murray, on November 29, 2007,
23  the court directed the United States Marshal to obtain information directly from prison officials
24  and, if possible, to effect service of process.  The United States Marshal was directed to notify
25  the court within 20 days of the date of that order if information sufficient to serve these three
26  defendants was not available.  On February 15, 2008, court staff communicated with the United

States Marshal's office and learned that plaintiff had not provided sufficient information to locate Gunning, Marshall, or Murray.  Specifically, as to Gunning, this individual retired  and left no forwarding address.  As to Marshall and Murray, there are several such individuals working for the California Department of Corrections and Rehabilitation and plaintiff did not provide enough identifying information.  As to defendant Warvarovski, service was returned unexecuted on February 2, 2007, because he is on military service overseas and cannot be located.

It is possible that plaintiff may be able to obtain additional information regarding these four defendants by way of the discovery process.  Therefore, the court does not recommend dismissal of them at this time.  If, however, after a reasonable period of time, plaintiff is unable to provide additional information, the court will recommend dismissal pursuant to Federal Rule of Civil Procedure 4(m).  In the meantime, the court will monitor for service of these four individuals.

## V.  CONCLUSION

In summary, the court concludes as follows:

1. Plaintiff may not assert third party standing and this action should be limited to plaintiff's damages only;

2. The continuing violation doctrine applies and none of plaintiff's retaliation claims are time-barred;

3. All claims as against defendants M. Brown, Broyles, Clevenstine, Hensley, Knipp, Leeworthy, McNeil, Reaves, Robinson, and Stanely are time-barred and these individuals should be dismissed as defendants to this action;

4. Plaintiff's Eighth Amendment claims, which relate to the conditions of his confinement in administrative segregation between September 2000 and September 2001, are time-barred and cannot provide a separate avenue for relief;

5. Claim 8m does not present a stand-alone basis for liability but represents part of plaintiff's allegations of the damages suffered;

6. This case does not raise a stand-alone First Amendment claim based on plaintiff's mail;

7.  This case does not raise a stand-alone Eighth Amendment claim based on verbal harassment;

8.  This case does not raise a stand-alone constitutional claim based on the prison grievance process;

9.  Plaintiff has failed to adequately allege facts to establish a causal connection between defendants M. Brown, Campbell, Carillo, Cherry, Doherty, Gentile, Henderson, Klinefelter, Olsen, Seinwerth, D. Brown, Knipp, Kudlata, Laguna, Lincoln, Rendon, Reyes, Subia, Mynhier, Boyd, Kernan, Silva, Hickman, Knowles, Emigh, Gannis, Hansen, Hurdle, Melching, Presley, Reaves, Rianda, Taylor, and Uribe, and his claim of retaliation, and these defendants should be dismissed without further leave to amend;

10. Vasconcellos and Gray should be dismissed as defendants to this action; and

11. This action should proceed on plaintiff's retaliation claims as against remaining defendants Ali, C. Brown, Danzinger, Etheredge, Fowler, Gunning, Gutierrez, Hein, Hogan, Kaiser, Kanipe, Keeland, King, Lattimore, Marshall, Mesa, Murray, Nelson, O'Connor, Poe, Sauceda, Smith, Stewart, Vasquez, Warren, Warvarovski, and Whittle only.

Based on the foregoing, the undersigned recommends that:

1.  Defendants' motion for an extension of time, nunc pro tunc (Doc. 147), be granted;

2.  Defendants' motion to strike (Doc. 143) be denied;

3.  Defendants' motions to dismiss (Docs. 98, 114, 120, 131) be granted in part and denied in part, as outlined above;

4.  Plaintiff's Eighth Amendment conditions of confinement claims be dismissed;

5.  Vasconcellos, Gray, M. Brown, Broyles, Clevenstine, Hensley, Knipp, Leeworthy, McNeil, Reaves, Robinson, Stanley, Campbell, Carillo, Cherry, Doherty, Gentile, Henderson, Klinefelter, Olsen, Seinwerth, D. Brown, Kudlata, Laguna, Lincoln, Rendon, Reyes, Subia, Mynhier, Boyd, Kernan, Silva, Hickman, Knowles, Emigh, Grannis, Hansen, Hurdle, Melching, Presley, Rianda, Taylor, and Uribe be dismissed as defendants to this action; and

///

6. This action be referred back to the magistrate judge to direct the remaining appearing defendants to file an answer and to monitor for service of the four unserved defendants.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 15 days after being served with these findings and recommendations, any party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 20, 2008

/s/ Craig M. Kellison
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE