1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9               **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   ERIC CHARLES RODNEY KNAPP,          No. CIV S-05-2520-FCD-CMK-P

12                    Plaintiff,

13            vs.                        <u>FINDINGS AND RECOMMENDATIONS</u>

14   N. ALI,[1] et al.,

15                    Defendants.

16   _____/

17            Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant

18   to 42 U.S.C. § 1983.  Pending before the court are: (1) defendants' motion to dismiss (Doc. 175)

19   based on failure to exhaust administrative remedies; and (2) defendant Whittles' motion for

20   judgment on the pleadings (Doc. 177).[2]  Plaintiff has filed oppositions to both motions.

21   / / /

22   / / /

23   _____

24        [1]       Previously, the court's captions listed Roderick Hickman as the lead defendant.
     This individual, however, has been terminated as a defendant to the action.  N. Ali is the first
25   remaining defendant listed on the court's docket and, therefore, is now the lead defendant.

26        [2]       Defendant Whittle has joined in the motion to dismiss.

1

# I. BACKGROUND

This action proceeds on plaintiff's third amended complaint (Doc. 39).  On February 21, 2008, the court issued findings and recommendations in which the court outlined the following background:

Plaintiff . . . alleges the following general background facts:

Plaintiff . . . is a prisoner within the California Department of Corrections and Rehabilitation ("CDCR"). He is also a plaintiff class member of Coleman v. Schwarzenegger, 912 F. Supp. 1282 (E.D. Cal. 1995), and Armstrong v. Schwarzenegger, 124 F.3d 1019 (9th Cir. 1997).  He has been a patient in the CDCR's Mental Health Services Delivery System since 1996 with a consistent diagnosis of Post-Traumatic Stress Disorder and related conditions resulting from severe physical and psychological trauma he survived upon entering the prison system in 1994 as a former state peace officer and federal military police sergeant wrongly convicted of sexually assaulting a woman who has since come forward and admitted that she lied against him.  Accordingly, he was specially transferred to Mule Creek State Prison . . . at the beginning of 1999 specifically for the purpose of facilitating his mental health condition . . . so he could be visited on a regular and frequent basis by his physically disabled mother and other loved ones residing in that area.

Plaintiff's mother is director of a prison watchdog group called United for No Injustice, Oppression, Neglect ("UNION").  Since 1998, Plaintiff's mother has worked through UNION to educate, organize, and thus empower the family members and friends of California state prisoners to more effectively advocate against the mistreatment of prisoners and corruption plaguing the California prison system.

Following Plaintiff's arrival at MCSP, especially beginning in the month of June 2000, Plaintiff, his activist mother, and their respective associates both in and out of prison lawfully exercised protected rights under the U.S. Constitution's 1st Amendment by speaking freely, peaceably associating and assembling toward a common good, and accessing available press, media, government officials, and courts to report, seek redress of, and otherwise publicly expose and denounce injustice, oppression, neglect, and other abuse of Plaintiff and other CDCR prisoners, particularly at MCSP.

///

2

Plaintiff asserts 12 separate claims, each with numerous sub-claims, alleging acts of retaliation by defendants because plaintiff engaged in the following activities:  (1) petitioned for redress of grievances; (2) associated with others; (3) assembled with others; (4) spoke freely; and (5) communicated through confidential mail.  He asserts the following specific acts of retaliation:  (1) confiscation and destruction of personal property; (2) unreasonable confiscation of mail; (3) frequent cell searches; and (4) nude body inspections.  Plaintiff specifically states that he is complaining of specific acts which are part of a "3-year campaign of retaliatory abuse" and that this campaign continues "unabated."

Plaintiff's complaint also asserts Eighth Amendment violations based on the following claims related to conditions of confinement while plaintiff was housed in administrative segregation between September 2000 and September 2001:  (1) endangerment of personal safety; (2) intentional and/or negligent infliction of emotional anguish; (3) denial of clothing and/or warmth; (4) denial of sanitary conditions; (5) deliberate indifference toward known mental conditions; (6) deprivation of prescribed therapy and treatment; (7) excessive force; (8) denial of food; (9) experimental drugging; and (10) coercion, duress, and menace causing mental harm.

In its December 13, 2006, order determining that service of the third amended complaint was appropriate for the named defendants, the court stated:

. . . The gist of his complaint is that defendants at Mule Creek State Prison (MCSP) have retaliated against him for complaining about staff misconduct and working to improve prison conditions. Plaintiff alleges that defendants interfered with his prison grievances, interfered with his right to visitation, confiscated materials from a bulletin board, forced him to resign from the Men's Advisory Council, and forced other prisoners to deface a mural that plaintiff had painted. Finally, plaintiff alleges that his constitutional rights were violated by deplorable living conditions which he suffered during three separate placements in administrative segregation and by being served contaminated food.

Plaintiff's claims concerning the conditions he alleged[ly] encountered in Administrative Segregation and his claims that he was served contaminated food state cognizable claims for relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915A(b).  By themselves, the claims that defendants interfered with his prison grievances, interfered with his right to visitation, confiscated materials from a bulletin board, forced him to resign from the Men's Advisory Council, and forced other prisoners to deface a mural that plaintiff had painted do not state cognizable civil rights claims.  However, to the extent that plaintiff alleges that the defendants engaged in the above-described actions as part of ongoing retaliatory conduct stemming from

3

plaintiff's filing of a grievance (a constitutionally protected activity) concerning an incident in 2000, plaintiff does state a cognizable retaliation claim against defendants.

The February 21, 2008, findings and recommendations were adopted in full on March 12, 2008. The March 12, 2008, order set forth the following rulings, among others, which now govern this action:

1. The continuing violation doctrine applies and none of plaintiff's retaliation claims are time-barred;

2. Plaintiff's Eighth Amendment claims, which relate to the conditions of his confinement in administrative segregation between September 2000 and September 2001, are time-barred;

3. Claim 8m does not present a stand-alone basis for liability but represents part of plaintiff's allegations of the damages he suffered; and

4. This action proceeds on plaintiff's retaliation claims as against remaining defendants Ali, C. Brown, Danziger, Etheredge, Fowler, Gunning, Gutierrez, Hein, Hogan, Kaiser, Kanipe, Keeland, King, Lattimore, Marshall, Mesa, Murray, Nelson, O'Connor, Poe, Sauceda, Smith, Stewart, Vasquez, Warren, Warvarovski, and Whittle.[3]

## II.  APPLICABLE LEGAL STANDARDS

A motion to dismiss based on a prisoner's failure to exhaust administrative remedies is properly the subject of an unenumerated motion under Federal Rule of Civil Procedure 12(b). See Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). "In deciding a motion to dismiss for failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Id. at 1119-20. Where the court looks beyond the pleadings to a factual record in deciding the motion to dismiss, which is ". . . a procedure closely analogous to summary judgment," the court must assure that the plaintiff has fair notice of his opportunity to develop a record. Id. at 1120 n.14 (referencing the notice requirements outlined in

---

[3]     Process directed to defendants Gunning, Marshall, and Murray was returned unexecuted on February 19, 2008 (Doc. 149). Defendant Warvarovski also remains unserved. By separate order, plaintiff will be directed to show cause why these defendants should not be dismissed pursuant to Federal Rule of Civil Procedure 4(m) for failure to effect timely service.

1  Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc), and Klingele v. Eikenberry, 849 F.2d

2  409 (9th Cir. 1988).  Defendants bear the burden of establishing that the plaintiff failed to

3  exhaust administrative remedies prior to filing suit.  See Wyatt, 315 F.3d at 1120.  If the court

4  concludes that administrative remedies have not been exhausted, the unexhausted claims should

5  be dismissed without prejudice.  See id. at 1120; see also Jones v. Bock, 127 S.Ct. 910 (2007).

6         Motions under Rule 12(c) are similar to motions under Rule 12(b) in that

7  judgment on the pleadings is appropriate if ". . . it is clear that no relief could be granted under

8  any set of facts that could be proven consistent with the allegations."  McGlinchy v. Shell

9  Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988).  Rather than testing whether the factual

10  allegations state a claim, motions under Rule 12(c) test whether, even if all the facts alleged in

11  the complaint can be proved, defendants are nonetheless entitled to judgment as a matter of law.

12  See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989).

13  All non-conclusory factual allegations in the complaint must be assumed to be true.  See Austad

14  v. United States, 386 F.2d 147, 149 (9th Cir. 1967); see also McGlinchy, 845 F.2d at 810.

15

16                              **III.  DISCUSSION**

17         In their motion to dismiss, defendants argue that plaintiff failed to exhaust

18  administrative remedies as to some, but not all, of the remaining claims.  In his motion for

19  judgment on the pleadings, defendant Whittle argues that claims against him are time-barred.

20     **A.     Defendants' Motion to Dismiss**

21         Prisoners seeking relief under § 1983 must exhaust all available administrative

22  remedies prior to bringing suit.  See 42 U.S.C. § 1997e(a).  This requirement is mandatory

23  regardless of the relief sought.  See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling

24  Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)).  Because exhaustion must precede the filing of

25  the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies

26  while the lawsuit is pending.  See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).  The

1   Supreme Court recently addressed the exhaustion requirement in <u>Jones v. Bock</u>, 549 U.S. 199

2   (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in

3   the complaint because lack of exhaustion is an affirmative defense which must be pleaded and

4   proved by the defendants; (2) an individual named as a defendant does not necessarily need to be

5   named in the grievance process for exhaustion to be considered adequate because the applicable

6   procedural rules that a prisoner must follow are defined by the particular grievance process, not

7   by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some,

8   but not all, claims are unexhausted.

9       The Supreme Court also held in <u>Woodford v. Ngo</u> that, in order to exhaust

10  administrative remedies, the prisoner must comply with all of the prison system's procedural

11  rules so that the agency addresses the issues on the merits.   548 U.S. 81, 89-96 (2006).  Thus,

12  exhaustion requires compliance with "deadlines and other critical procedural rules." <u>Id.</u> at 90.

13  Partial compliance is not enough. <u>See id.</u>  Substantively, the prisoner must submit a grievance

14  which affords prison officials a full and fair opportunity to address the prisoner's claims. <u>See id.</u>

15  at 90, 93.  The Supreme Court noted that one of the results of proper exhaustion is to reduce the

16  quantity of prisoner suits "because some prisoners are successful in the administrative process,

17  and others are persuaded by the proceedings not to file an action in federal court." <u>Id.</u> at 94.

18      A prison inmate in California satisfies the procedural rules of the administrative

19  exhaustion requirement by following the process set forth in §§ 3084.1-3084.7 of Title 15 of the

20  California Code of Regulations.  In California, inmates "may appeal any departmental decision,

21  action, condition, or policy which they can demonstrate as having an adverse effect upon their

22  welfare." Cal. Code Regs. tit. 15, § 3084.1(a).  These regulations require the prisoner to proceed

23  through several levels of appeal:  (1) informal resolution; (2) formal appeal; (3) second level

24  appeal to institution head; (4) third level appeal to the director of the California Department of

25  Corrections and Rehabilitation.  A decision at the third formal level, which is also referred to as

26  the director's level, is not appealable and concludes a prisoner's departmental administrative

1  remedy.  See Cal. Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2).  Departmental appeals

2  coordinators may summarily reject a prisoner's untimely administrative appeal.  See Cal. Code

3  Regs. tit. 15, §§ 3084.3(c)(6) and 3084.6(c).   If a group of inmates intend to appeal the same

4  decision or action, one grievance form is used and a list of the participating inmates must be

5  attached.  The list must be legible and state the inmates' names, departmental identification

6  numbers, and housing assignment.  The form must also be signed by all participating inmates.

7  Currently, California regulations do not contain any provision specifying who must be named in

8  the grievance.

9          In certain circumstances, the regulations make it impossible for the inmate to

10  pursue a grievance through the entire grievance process.  See Brown v. Valoff, 422 F.3d 926, 939

11  n. 11 (9th Cir. 2005).  Where a claim contained in an inmate's grievance is characterized by

12  prison officials as a "staff complaint" and processed through a separate confidential process,

13  prison officials lose any authority to act on the subject of the grievance.  See id. at 937 (citing

14  Booth, 532 U.S. at 736 n. 4).  Thus, the claim is exhausted when it is characterized as a "staff

15  complaint."  See id. at 940.  If there are separate claims in the same grievance for which further

16  administrative review could provide relief, prison regulations require that the prisoner be notified

17  that such claims must be appealed separately.  See id. at 939.  The court may presume that the

18  absence of such a notice indicates that the grievance did not present any claims which could be

19  appealed separate from the confidential "staff complaint" process.  See id.

20          In their motion to dismiss, defendants concede that plaintiff has exhausted certain

21  claims as follows:

22          1.    The discreet issue raised in sub-claim 3g of whether the March 15, 2001,
                  CDC 128-B was issued by Officer Kaiser in retaliation for the August 17,
23                2000, complaint filed by Plaintiff's visitor, Natalie Bolds;

24          2.    The discreet issue raised in sub-claim 4c of whether the work supervisor's
                  report issued by Captain Brown on July 12, 2001, was intended to harass
25                and retaliate against Plaintiff for his conduct as the MAC vice-chairman;

26  / / /

7

3.      The discreet issue raised in sub-claim 7a of whether Captain Warren's order to remove and to prohibit certain written materials posted on prison bulletin boards by Plaintiff in October 2001, was retaliatory in nature;

4.      The discreet issue raised in sub-claim 8h of whether Officer Poe issued RVR B09/02-013, and Lieutenant Gutierrez found him guilty of the offense, in retaliation for Plaintiff having exercised his First Amendment rights;

5.      The discreet issue raised in sub-claims 9c, 10f, m, o, r, and s of whether Captain Warren, Lieutenant Gutierrez, and Lieutenant Etheredge participated in Plaintiff's February 2003 ad-seg placement and subsequent rules violation report #B09/03-025, in retaliation for Plaintiff having exercised his First Amendment rights; and

6.      The discreet issues raised in sub-claims 12a and b of whether Captain Lattimore and Lieutenant Gutierrez caused Plaintiff to suffer retaliatory disciplinary actions, MCSP RVR #B06/03-035/SCP-Sac RVR A-03-07-007, for expressing himself in a letter dated June 19, 2003, . . . and CSP-Sac RVR A-03-08-002 for expressing himself in a letter dated July 30, 2003. . . .

Defendants argue that all other claims are unexhausted "on the basis of procedural defects, failure to give fair notice of his claims, and failure to either commence or complete the exhaustion process. . . ."

The following is a summary of plaintiff's general allegations, as alleged in 12 claims:

Claim 1         Plaintiff alleges that various defendants identified in seven sub-claims (Claims 1a-g) "deprived Plaintiff and his associates of secured rights, privileges, and immunities by causing them to begin suffering an oppressive campaign of retaliatory abuse that was directly linked to Plaintiff documenting KAISER's misconduct. . . ." Defendants argue that Claims 1a-f are unexhausted. They do not raise any specific argument as to Claim 1g.

Claim 2         Plaintiff sets forth 12 sub-claims (Claims 2a-l) relating to events occurring in September and October 2000. Defendants argue that Claim 2 is unexhausted in its entirety.

Claim 3         Plaintiff alleges in eight sub-claims (Claims 3a-h) that defendants continued to retaliate against him. Defendants argue that plaintiff failed to exhaust Claims 3a-c and Claims 3e-f. No specific arguments are raised as to Claim 3d and Claims 3g-h. As noted above, defendants concede that Claim 3g is exhausted.

| | | |
|---|---|---|
| Claim 4 | | Plaintiff alleges in three sub-claims (Claims 4a-c) that defendants continued to retaliate against him, specifically because "Plaintiff was elected on 5/2/01 to represent his prison association under state law on the Men's Advisory Council ('MAC')." Defendants argue that all of Claim 4 is unexhausted, with the exception of that portion of Claim 4c relating to a July 12, 2001, work supervisor's report. |
| Claim 5 | | In Claim 5, plaintiff presents four sub-claims (Claims 5a-d) relating to events occurring "after and because Plaintiff lawfully expressed himself in confidential mail prepared and sent following the East Coast terrorist attacks of 9/11/01." Defendants argue that all of Claim 5 is unexhausted. |
| Claim 6 | | Plaintiff raises four sub-claims (Claims 6a-d) alleging continuing retaliation "which occurred after and because Plaintiff, at the insistence of his prisoner associates, lawfully sought re-election to the MAC." Defendants argue that all of Claim 6 is unexhausted. |
| Claim 7 | | In Claim 7, plaintiff sets forth allegations concerning events on October 29, 2001, and October 31, 2001. Defendants argue this claim is unexhausted except to the extent plaintiff asserts that defendant Warren's order to remove information posted on a bulletin board was retaliatory in nature. |
| Claim 8 | | Plaintiff sets forth 15 sub-claims (Claims 8a-n) of continuing retaliation "which occurred after and because Plaintiff exercised his protected rights in: (1) correspondence on 12/6/01 to GRAY and VASCONCELLOS stating that an investigation should be conducted into 'the oppressive reign of mike KNOWLES' at MCSP; (b) filing suit on 1/16/02 against HICKMAN, KAISER, KING, KNOWLES, LAGUNA, MYNHIER, SILVA, VASQUEZ, and WARREN for their roles in his retaliatory and otherwise unlawful confinements in ad-seg on 9/22/00 and 9/22/01 . . .; and (c) mailing on 3/11/02 to GRAY, VASCONCELLOS, and others with the state senate a letter and 20-page compilation of grievances reflecting mismanagement by KNOWLES and other officials over MCSP." Defendants argue Claims 8a-d, 8g-h, 8j, and 8l-n are unexhausted. Defendants concede that the portion of Claim 8h relating to RVR B09/02-013 is exhausted. Defendants do not raise any specific arguments as to Claims 8e-f, 8i, and 8k. |
| Claim 9 | | Plaintiff alleges in six sub-claims (Claims 9a-f) continuing acts of retaliation "after and because Plaintiff and his prisoner associates petitioned for redress of their food being repeatedly defiled by other prisoners." Defendants concede that Claim 9c, which relates to plaintiff's placement in administrative segregation, is exhausted. Otherwise, defendants argue that Claims 9b-c and 9e-f are unexhausted. They do not present any specific argument as to Claims 9a and 9d. |

Claim 10     In 24 sub-claims (Claims 10a-x), plaintiff alleges a continuing "campaign of retaliatory oppression . . . which occurred after and because Plaintiff and his associates documented, reported, publicized. . ., and otherwise grieved the recent food contaminations and related deliberate indifference, endangerment, and retaliatory acts alleged above at Claim 9." Defendants concede that Claims 10f, 10m, 10o, 10r, and 10s are exhausted, but only as to whether defendants Warren, Gutierrez, and Etheredge retaliated against plaintiff with respect to a February 2003 administrative segregation placement. Otherwise, defendants contend that Claims 10a-j, 10m, 10o, 10q-s, 10u-v, and 10x are unexhausted. They do not provide any specific arguments as to the remaining sub-claims.

Claim 11     In Claim 11, plaintiff outlines 11 sub-claims (Claims 11a-k) of retaliation for ". . . petitioning for redress of the unlawful events, circumstances, and conditions alleged in Claims 1-10 above. . . ." Defendants do not present any specific arguments relating to Claim 11.

Claim 12     In Claim 12, plaintiff sets forth three sub-claims (Claims 12a-c) alleging continuing retaliation occurring "after and because Plaintiff lawfully exercised his right to speak freely in writing after he had suffered retaliatory transfer to another prison." Defendants concede that Claims 12a and 12b are exhausted, but offer no argument as to Claim 12c.

Defendants' specific arguments are addressed below.

      1.     Claims 1a-c

      Plaintiff alleges that defendant Kaiser engaged in various acts of retaliation in June and July 2000. Defendants appear to concede that plaintiff submitted inmate grievances concerning the underlying events in June and July 2000, but argue that plaintiff's claims are not exhausted because "Plaintiff's appeal makes no claim of retaliation in connection with these incidents." Submitted with defendants' motion is appeal no. MCSP-B-00-01495, which concerns visit terminations on three occasions between July 2, 2000, and July 9, 2000.[4] Defendants state that this grievance, however, "does not describe any retaliatory motives or actions" and conclude that, for this reason, plaintiff's retaliation claims in Claims 1a-c are unexhausted. Defendants argue that, because plaintiff failed to describe retaliatory conduct, his

---

     [4]     Defendants do not point to any evidence indicating that plaintiff failed to exhaust the claim alleged in Claim 1a regarding events in June 2000.

1  grievance "did not give CDCR a fair and full opportunity to adjudicate these retaliation claims."

2      The court does not agree with defendants' analysis, which reads too much

3  specificity into the substantive requirement of exhaustion.  As defendants correctly note, and as

4  outlined above, the exhaustion requirement is meant to provide prison officials a full and fair

5  opportunity to address grievances.  The court does not interpret this to mean, however, that the

6  prisoner can only properly exhaust a claim by outlining the legal theories in his inmate

7  grievances, which is essentially the rule defendants ask the court to follow.  Specifically,

8  defendants argue that, by failing to describe retaliatory conduct in his prison grievances, plaintiff

9  has not provided prison officials a full and fair opportunity to address plaintiff's claims relating

10  to events in June and July 2000.  However, plaintiff's grievances describe what plaintiff claims

11  were improper visit terminations on specific dates.  Plaintiff further names the officials who were

12  responsible for the allegedly improper visit terminations.  Thus, prison officials had a full and

13  fair opportunity to address the grievance.  In fact, based on prison officials' response to plaintiff's

14  grievance concerning visit terminations, it appears that steps were taken to avoid unnecessary

15  visit termination.

16      Defendants would have the court adopt a rule which essentially requires prisoners

17  to outline the legal bases of their eventual federal court claims in their inmate grievances.  First,

18  such a requirement would not provide any more of an opportunity for prison officials to address

19  grievances than would be afforded by requiring prisoners to simply outline the factual bases of

20  their claims in the grievance process.  Second, demanding that inmates outline legal theories in

21  inmate grievances would put prison officials in the role of deciding whether constitutional or

22  statutory rights had been violated.  This is more properly the role of the court in the context of a

23  civil rights case such as this.  All that the exhaustion requirement demands is that the prisoner

24  provide prison officials an opportunity to address inmate complaints.  The court finds that

25  plaintiff's grievance in this case, which outlined specific occurrences of allegedly improper visit

26  / / /

1   terminations by specific individuals, did just that.[5]

2       2.   <u>Claim 1d</u>

3       In Claim 1d, plaintiff alleges that, on July 12, 2000, defendants "caused Plaintiff

4   to suffer retaliatory and false disciplinary action. . ." as a result of his grievances relating to

5   defendant Kaiser.  Defendants provide the court with grievance no. MCSP-B-00-01764 which

6   they state "is Plaintiff's appeal from RVR B07/00-12 for disobeying a direct order during

7   visitation on July 4, 2000, which resulted in 30 day credit forfeiture."  Defendants add: "In this

8   appeal, Plaintiff describes the problem as his having been unjustly found guilty of this rules

9   violation."  As with Claims 1a-c, defendants conclude that, because plaintiff did not specifically

10  mention retaliation, he failed to exhaust Claim 1d.  For the reasons stated above, the court does

11  not agree.  Because, as defendants concede, plaintiff's grievance outlined the facts concerning the

12  allegedly improper rules violation charge, he sufficiently provided prison officials an opportunity

13  to address the grievance.

14      3.   <u>Claims 1e-f</u>

15      In these claims, plaintiff complains of allegedly retaliatory conduct occurring on

16  July 28, 2000.  Defendants state that plaintiff failed to disclose in his responses to their discovery

17  requests any grievances filed within 15 working days of July 28, 2000.  They conclude that,

18  because plaintiff failed to comply with the procedural requirement of submitting a timely

19

20      [5]   This conclusion is not inconsistent with the court's statement in <u>Cooper v. Tuggle</u>, 2007 WL 570200 (E.D. Cal. 2007), cited by defendants, that: "To comply with the PLRA

21  exhaustion requirement, a state prisoner in California must file an inmate appeal on each claim concerning prison conditions or events and must proceed to the highest level of administrative

22  review available to him before he seeks judicial relief, regardless of the relief desired by the prisoner."  In that case, the court ultimately concluded that the plaintiff had failed to satisfy the

23  exhaustion requirement because he did not file an individual grievance regarding the events alleged in the complaint, nor did he join in a separate group grievance concerning such events.

24  The court held: "Because plaintiff failed to comply with the prison system's grievance procedure, he did not notify prison officials of his grievance, much less give prison officials a fair

25  opportunity to consider his grievance."  Thus, the court in <u>Cooper</u>, as in the case at bar, was concerned with whether the prisoner's inmate grievance sufficiently described the underlying

26  facts of the complaint, not whether the grievance set forth specific legal theories.

grievance, Claims 1e-f are unexhausted.  According to plaintiff's responses to discovery, the court must agree with defendants and conclude that these claims are unexhausted.[6]

### 4.    Claim 1g

As noted above, defendants do not provide any specific arguments concerning Claim 1g, in which plaintiff complains of continuing retaliation by various defendants apparently from July 28, 2000, "[u]ntil 9/22/00."[7]  Therefore, defendants cannot meet their burden of establishing that any claim set forth in Claim 1g is unexhausted.

### 5.    Claims 2a-e

In Claim 2a, plaintiff alleges that, on September 4, 2000, various defendants "caused Plaintiff to be falsely told by KAISER that only he could no longer 'conversate' with fellow prisoners in the visiting room."  In Claim 2b, plaintiff asserts that, on September 8, 2000, defendant King told plaintiff: "Stay the fuck away from KAISER!" and "I'd like to throw your ass into the hole."  In Claim 2c, plaintiff alleges that, on September 14, 2000, he was threatened with a write-up for asking about "secret allegations" against him.  Plaintiff states in Claim 2d that, on September 20, 2000, false allegations had been "solicited from prisoners about Plaintiff supposedly gloating to others about KAISER's removal from visiting after the complaint by Plaintiff's fiancé on 8/17/00."  In Claim 2e, plaintiff states that, on September 21, 2000, defendant Kaiser threatened to no longer report to work and file a "stress claim" against prison officials if they did not stop investigating the complaint filed by Plaintiff's fiancé.

/ / /

/ / /

---

[6]    In his opposition to defendants' motion, plaintiff does not identify any prison grievance concerning the events of July 28, 2000.

[7]    The court notes that the only remaining defendant named in Claim 1g is defendant Marshall, who has not been served.  By separate order the court will direct plaintiff to show cause why defendant Marshall should not be dismissed for failure to effect timely service of process.

1     Defendants argue that none of these claims are exhausted.  They reference

2  grievance no. MSCP-B-00-02016, concerning the special purchase of a television, MCSP-B-00-

3  02533, concerning a book being held in the mailroom as contraband, and two other inmate

4  appeals which were screened out for procedural defects.  Defendants add: "There are no other

5  appeals submitted within 15 working days of the period between September 4 and 21, 2000,

6  concerning the events alleged in sub-claims 2a-e."  Based on his opposition, plaintiff appears to

7  claim that he submitted "written and verbal reports," "miscellaneous documentation," and a

8  "citizen's complaint," and that these efforts should satisfy the exhaustion requirement.  He then

9  references numerous pages purporting to represent his "related communications with . . . ranking

10  CDCR officials and/or external structures of other authority through confidential mail."

11     The court finds that plaintiff failed to satisfy the exhaustion requirement as to

12  Claims 2a-e.  As outlined above, prisoners in California are required to follow a specified

13  grievance process and compliance with procedural rules is required to satisfy the exhaustion

14  requirement.  By plaintiff's own admission, he did not do so.  Plaintiff's claim that other efforts

15  he undertook should suffice is unavailing.

16     6.    Claims 2f-l

17     In Claims 2f-l, plaintiff complains of retaliatory confinement in administrative

18  segregation from September 22, 2000, through October 6, 2000.  Plaintiff outlines specific

19  allegations of retaliation in Claims 2f-h.  Specifically, plaintiff alleges that, while in

20  administrative segregation during this period, defendants "caused Plaintiff to suffer repeated

21  humiliation and degradation by being forced while locked inside the narrow cages to strip naked

22  and awkwardly contort his body so guards could look at his intimate body parts."  He also asserts

23  that during this period of administrative segregation confinement, the  following additional

24  retaliatory conduct occurred: (1) he was deprived of all personal property; (2) minimum required

25  clothing and bedding was denied; (3) he was treated without distinction from prisoners who were

26  in administrative segregation for punitive reasons; (4) he was only allowed limited and restricted

14

1   non-contact visitation; and (5) he was not allowed phone calls.  In Claims 2i-l, plaintiff alleges

2   that defendants obstructed his access to the prison grievance process with respect to his

3   complaints concerning the September-October administrative segregation confinement.

4          Defendants argue that these claims were previously determined to be unexhausted

5   in Knapp v. Knowles, E. Dist. Cal. case no. CIV-S-02-0175.  They assert that, because similar

6   claims relating to plaintiff's administrative segregation confinement beginning on September 22,

7   2000, were determined to be unexhausted in that case, plaintiff is precluded from litigating those

8   issues in this case.  Defendants also reference two grievances concerning these claims, which

9   were screened out at the first level, one because too many issues were raised in a single

10  grievance, and the other because documentation to support the grievance was not attached.

11  According to defendants, plaintiff did not re-submit his grievances concerning the September-

12  October 2000 administrative segregation placement and, thus, abandoned his claims.  Defendants

13  conclude that Claims 2f-h are unexhausted because plaintiff did not complete the prison

14  grievance process.

15         In his opposition, plaintiff refers to the grievances attached by defendants as

16  exhibits to their motion and asserts that prison officials improperly rejected his grievances related

17  to Claims 2f-h.  He also states that, "[i]mmediately after and because Plaintiff submitted the

18  [grievances], defendant CDCR personnel essentially granted everything he had requested therein

19  by bringing him before a special classification hearing and releasing him from ad-seg on 10/6/00

20  and restoring him to his former cell location and position on the Men's Advisory Council."

21  Plaintiff does not otherwise indicate that he re-submitted the rejected grievances or pursued his

22  claims through all the levels of review set forth in applicable state regulations.

23         Regardless of whether the termination of plaintiff's administrative segregation

24  placement in October 2000 was motivated by his having submitted grievances which were

25  screened out, it is clear that plaintiff did not pursue his complaints regarding such placement

26  through the final level of administrative review.  Thus, even if prison officials ultimately

addressed plaintiff's concerns substantively, procedurally he did not comply with the requirements of the regulations.  As outlined above, exhaustion requires compliance with all state procedural rules.  Because plaintiff did not complete the grievance process through the final level of review with respect to the issues outlined in Claims 2f-h, these claims are unexhausted.

In Claims 2i-l, plaintiff appears to contend that prison officials obstructed his access to the grievance process with respect to his grievances concerning the issues outlined in Claims 2f-h.  While the Ninth Circuit has recognized a limited exception to the exhaustion requirement where the ability to file grievances has been obstructed, see Ngo v. Woodford, 539 F.3d 1108, 1110 (9th Cir. 2008),  plaintiff does not present any evidence to support the applicability of such an exception.  In particular, he states that his initial grievances were improperly rejected, but he does not state that he attempted to re-submit his grievances after correcting the procedural deficiencies which resulted in their rejection in the first instance.  Had plaintiff's grievances been rejected notwithstanding his attempts to correct the noted procedural defects, this would have provided some evidence to support his contention.

For these reasons, the court concludes that plaintiff has failed to comply with the exhaustion requirement as to Claims 2f-h, and that he failed to establish an exception based on alleged obstruction, as set forth in Claims 2i-l.[8]

7.    Claim 3a

In Claim 3a, plaintiff asserts that, on October 13, 2000, he discovered that defendants "caused KAISER to make a different prisoner also deface the mural Plaintiff had painted in the visiting room."  Defendants argue that this claim is unexhausted because he did not submit any grievance relating to the painting in the visiting room within 15 working days of discovery of the basis of the claim on October 13, 2000.  Defendants provide evidence that the first grievance plaintiff submitted after this date was log no. MCSP-B-00-03144, dated

---

[8]    To the extent plaintiff attempts to state in Claims 2i-l stand-alone claims relating to prison grievance process, the court has previously concluded that he cannot state such a claim.

November 12, 2000, which related to unauthorized conversations in the visiting room.

Plaintiff claims that his ability to file a timely grievance concerning the visiting room painting was obstructed by defendants. In support of this contention, plaintiff references pages of his declaration, attached as Attachment A to his opposition brief. In the referenced pages, plaintiff states at paragraph 95, that he and his fiancé discovered the defaced painting on October 13, 2000. At paragraph 96, he states that, on November 3, 2000, he and his fiancé were forbidden to converse. At paragraph 97, plaintiff adds that, on November 9, 2000, he was charged with a false rules violation. His declaration continues to outline various claims occurring throughout November and December 2000. Plaintiff does not, however, indicate any attempt to file a grievance within 15 working days of October 13, 2000, which was obstructed in any way. Nor does plaintiff reference any such grievance in his responses to defendants' discovery requests. The court finds that plaintiff has failed to establish an obstruction exception to the exhaustion requirement as to his claim concerning the visiting room painting.

8.      Claims 3b-c

In these claims, plaintiff alleges that, on November 9, 2000, he received an "unauthorized write-up" for failing to heed defendant Kaiser's November 3, 2000, order that he and his fiancé could not "conversate" in the visiting room. Defendants argue that these claims are unexhausted because appeal log no. "MCSP-B-00-03144 appeals the . . . November 3, 2000, custodial counseling chrono, but makes no claim of retaliatory misconduct." While defendants concede that "[t]his appeal was exhausted at the second level" because it was granted in part in that the November 3, 2000, chrono was removed from plaintiff's file, defendants argue that Claims 3b-c are nonetheless unexhausted because plaintiff's grievance makes no reference to a retaliatory motivation.

/ / /

/ / /

/ / /

17

1    Defendants are again asking the court to adopt a rule that would require, as part of

2    the exhaustion process, the plaintiff to set forth legal theories in the prison grievances.  For the

3    reasons discussed above, the court declines to do so.  A review of log no. MCSP-B-00-03144,

4    which is provided as an exhibit to defendants' motion, reveals that plaintiff in fact complained

5    about the allegedly improper rules violation charge of November 9, 2000.  Further, as defendants

6    concede, prison officials granted the appeal at the second level.  Thus, it is clear that plaintiff's

7    grievance was sufficient to provide officials a full and fair opportunity to address plaintiff's

8    grievance.  Therefore, the court finds that Claims 3b-c are exhausted.

9    9.    Claim 3d

10    Defendants do not offer any specific argument as to Claim 3d, in which plaintiff

11    asserts that defendants impeded his efforts to submit inmate grievances.  Therefore, defendants

12    cannot meet their burden of establishing that this claim is unexhausted.[9]

13    10.    Claims 3e-f

14    In Claim 3e, plaintiff alleges that, on December 29, 2000, defendants "caused

15    Plaintiff to suffer with his fiancé being capriciously singled out in the visiting room with an

16    arbitrary order from KAISER for just Plaintiff to change the direction of his chair only a mere

17    15° among several prisoners whose chairs were and remained similarly facing."  In Claim 3f,

18    plaintiff alleges that, on December 30, 2000, defendants "caused KAISER to further try inciting

19    prisoners against Plaintiff . . . so he would either make his fiancé withdraw the 8/17/00

20    complaint . . . or suffer assault, confinement back in ad-seg, transfer, and/or adverse

21    consequences."  Defendants argue that these claims are unexhausted because the next inmate

22    grievance submitted by plaintiff following December 29th and 30th, 2000, was a January 31,

23    2001, grievance related to an error in the handling of his mail.  Defendants present evidence in

24

25    [9]    As noted above, the court has previously concluded that plaintiff cannot state a
stand-alone claim related to the prison grievance system.  In any event, Claim 3d is no longer
26    before the court because all specific defendants named in that sub-claim have been dismissed.

18

1 the form of logs documenting plaintiff's various inmate grievances indicating that he did not

2 submit any complaints concerning events on December 29th and 30th, 2000, within 15 working

3 days of the incidents.

4        Referencing the same pages of his declaration discussed above in the context of

5 plaintiff's opposition declaration with respect to Claim 3a, plaintiff again asserts that defendants

6 impeded his efforts to file grievances as to the matters alleged in Claims 3e-f.  However, as noted

7 above, plaintiff's declaration does not support his contention that he was impeded from filing

8 grievances.  Other than the conclusory statement that "[d]efendants' threatening, intimidating,

9 and/or otherwise oppressive conduct . . . within 15 working days following the allegation(s) in

10 Count 3e . . . effectively inhibited Plaintiff from filing any [inmate grievances]," plaintiff does

11 not offer any specifics to support this contention.  In particular, he does not state what defendants

12 did that prevented him from filing grievances, nor does plaintiff outline any efforts he undertook

13 to file a timely grievance.  The court finds that plaintiff's argument that his ability to exhaust was

14 thwarted is unpersuasive and concludes that plaintiff failed to exhaust Claims 3e-f.

15        11.   Claim 3g

16        Defendants concede Claim 3g is exhausted as to the issue whether "the March 15,

17 2001, CDC 128-B was issued by Officer Kaiser in retaliation for the August 17, 2000, complaint

18 filed by Plaintiff's visitor, Natalie Bolds."  In Claim 3g, plaintiff asserts:

19         Beginning 1/28/01, [various defendants] caused Plaintiff to be retaliated

20         against further by KAISER with "Harassment" under state law which
        included a perjured write-up merely for having slight (if any) beard stubble
        when twice surprised by unexpected visitors.  (emphasis in original).

21

22 It is unclear whether the "write-up" referenced by plaintiff is the March 15, 2001, CDC 128-B

23 referenced by defendants.  To this extent this claim is different than the claim defendants concede

24 is exhausted, defendants do not present the court with any particular arguments concerning

25 exhaustion, other than their concession.  Therefore, the court must conclude that this claim is

26 exhausted.

12.   Claim 3h

Defendants do not offer any specific argument as to Claim 3h, in which plaintiff asserts that defendants impeded his efforts to submit inmate grievances.  Therefore, defendants cannot meet their burden of establishing that this claim is unexhausted.[10]

13.   Claim 4

In Claim 4, plaintiff alleges that, between May 3, 2001, and September 12, 2001, defendants engaged in retaliatory conduct following plaintiff's election on May 2, 2001, to the MAC.  In particular, plaintiff asserts in Claim 4c that "[defendants] jointly caused Plaintiff to repeatedly suffer retaliatory harassment, intimidation, & deprivation of guaranteed rights & liberties under state law regarding the performance of his authorized/required duties . . . as . . . MAC vice-chairman . . . on 7/12/01 with STANLEY unlawfully restraining/impeding his performance. . . ."  Defendants concede that Claim 4c is exhausted "as to the discreet issue . . . of whether the work supervisor's report issued . . . on July 12, 2001, was intended to harass and retaliate against Plaintiff for his conduct as the MAC vice-chairman."

Defendants otherwise argue that the remainder of Claim 4 is unexhausted.  Addressing plaintiff's claims in Claim 4 relating to the period from May 3, 2001, through July 24, 2001, defendants provide evidence indicating that the only grievance submitted by plaintiff within 15 working days of any date in this period was a July 25, 2001, grievance concerning the work supervisor's report.  As to the period from July 25, 2001, through September 12, 2001, the log of plaintiff's inmate grievances reflects that plaintiff submitted a grievance on August 7, 2001, complaining of a late response to an earlier appeal, but not relating to any of the allegations set forth in Claim 4.  Plaintiff's next inmate grievance concerned receipt of a copy of his administrative segregation placement notice and was resolved informally on October 18, 2001.  This grievance did not relate to any of the claims alleged in Claim 4.  Plaintiff's next three

---

[10]   As with Claim 3d, Claim 3h is no longer before the court because all defendants named in this sub-claim have been dismissed.

1    grievances were submitted on October 23, 2001, November 1, 2001, November 4, 2001.

2    Defendants conclude that, because none of these was submitted within 15 working days of

3    September 12, 2001, none of them operates to exhaust any of the claims in Claim 4.

4          Again, referring this time to pages A-28 through A-32 of the declaration attached

5    to his opposition brief, plaintiff asserts that defendants thwarted his ability to file grievances

6    concerning the claims outlined in Claim 4.  However, as with plaintiff's other assertions that his

7    grievances were thwarted, plaintiff does not offer any specificity of the attempts he made to file

8    grievances or what defendants did to thwart his attempts to do so.  The matters set forth in the

9    referenced pages of plaintiff's declaration appear to be a recitation of the allegations in the third

10   amended complaint and do not provide any specificity as to thwarted grievances.

11         Plaintiff's repeated citations to Hemphill v. New York, 380 F.3d 680 (2nd Cir.

12   2004), in support of his argument that defendants thwarted his efforts to exhaust are

13   unpersuasive.  In Hemphill, the Second Circuit Court of Appeals concluded that a three-part

14   inquiry should be undertaken by the district court when "a prisoner plaintiff plausibly seeks to

15   counter defendants' contention that the prisoner has failed to exhaust available administrative

16   remedies." Id. at 686 (emphasis added).  The court finds that the word "plausibly" is significant

17   in that the inquiry suggested in Hemphill is not required unless the plaintiff's counter to a non-

18   exhaustion argument is plausible in the first instance.  Here, plaintiff's arguments are entirely

19   conclusory and, therefore, not plausible.  To be plausible, plaintiff would, as discussed above,

20   have to present the court with specific factual allegations (i.e., as to his attempted efforts to file

21   grievances and what defendants allegedly did to thwart those efforts) which would take his

22   contention out of the realm of mere speculation.

23   / / /

24   / / /

25   / / /

26   / / /

21

1          14.   Claim 5

2          In Claim 5a, plaintiff states that, between September 22, 2001, and September 26,

3    2001, he suffered retaliatory placement in administrative segregation.  In Claim 5b, plaintiff

4    outlines various specific alleged instances of retaliatory treatment he suffered while in

5    administrative segregation in late September 2001.  In particular, he states that: (1) he was forced

6    to strip naked and awkwardly contort his body while locked in a small cage; (2) he was deprived

7    of all personal property; (3) he was denied minimum laundry and bedding; (4) he was treated

8    without distinction from prisoners who were in administrative segregation for punitive reasons;

9    and (5) he was not allowed any phone calls.  In Claim 5c, plaintiff alleges that, following his

10   release from administrative segregation on September 26, 2001, various defendants "caused a

11   perjured document to be placed in Plaintiff's permanent record to inaccurately reflect false

12   justification for his above confinement in ad-seg."  Finally, in Claim 5d, plaintiff asserts that

13   defendants obstructed his ability to file inmate grievances regarding his confinement in

14   administrative segregation in late September 2001.

15          Defendants contend that these claims are all unexhausted.  Defendants' evidence

16   reveals that the next grievance filed after plaintiff's release from administrative segregation at the

17   end of September 2001 was submitted on November 4, 2001.  This appeal – log no. MCSP-B-01-

18   03110 – challenges the reasons he was placed in administrative segregation on September 22,

19   2001, the reasons for his release on September 26, 2001, and the veracity of various documents

20   placed in his central file concerning the September 2001 administrative segregation placement.

21   Defendants conclude that this grievance fails to satisfy the exhaustion requirement because it

22   "makes no claim of retaliation in connection with Plaintiff's placement in ad-seg . . ., his

23   conditions of confinement, his ad-seg. placement review, or the contents of forms CDC-114-D

24   and CDC 128G."

25   / / /

26   / / /

22

A review of the grievance referenced by defendants reveals that plaintiff complains of three alleged falsehoods contained in a November 1, 2001, "CDC 128-G classification chrono." The essence of plaintiff's grievance was that he was improperly placed in administrative segregation between September 22, 2001, and September 26, 2001, and the reasons reflected in the classification chrono for his placement were not correct. This comports with the general claim set forth in Claim 5c regarding the allegedly "perjured document" placed in plaintiff's file following his release from administrative segregation. Therefore, Claim 5c is exhausted. As defendants note, plaintiff makes no reference to the conditions of his confinement in administrative segregation in late September 2001. Therefore, plaintiff failed to exhaust administrative remedies as to the allegations set forth in Claim 5b. As to plaintiff's general claim that he was improperly placed in administrative segregation, as set forth in Claim 5a, the court finds that this claim is sufficiently exhausted and again rejects defendants' suggestion that the court adopt a rule requiring the plaintiff to state legal theories (i.e., retaliatory motive) in his administrative appeals. Finally, as to Claim 5d, in which plaintiff alleges that his attempts to file grievances were thwarted, plaintiff fails to provide any specificity upon which this court can conclude that exhaustion should be excused.

Based on the foregoing, the court concludes that the claims set forth in Claim 5b are unexhausted but that, otherwise and to the extent the remaining sub-claims in Claim 5 state a stand-alone claim based on retaliation, such claims are exhausted.

15.   Claim 6

In Claim 6a, plaintiff alleges that, on October 3, 2001, various defendants "jointly caused Plaintiff to suffer being coerced by WARREN to not seek election to a vacant MAC position." In Claim 6b, plaintiff asserts that, on October 22, 2001, various defendants "jointly caused Plaintiff to suffer being falsely & otherwise unlawfully told by WARREN that he was banned from the MAC and not allowed to retain the position he had been lawfully elected to on 10/19/01." In Claim 6c, plaintiff alleges that, on March 3, 2002, various defendants improperly

1    ordered an election be held for the MAC seat he won in February 2002.  In Claim 6d, plaintiff

2    asserts that he was manipulated into withdrawing his grievance by threats of further retaliation.

3              Defendants argue that Claims 6a-b are unexhausted because plaintiff's grievance

4    at log no. MCSP-B-01-03021: (1) did not mention retaliatory motivation; and (2) the grievance

5    was withdrawn at the second level and was not advanced through the final level of review.  As to

6    Claims 6c-d, defendants argue that, while plaintiff submitted a grievance on March 1, 2002, the

7    grievance made no mention of retaliation and was withdrawn on March 7, 2002.  For the reasons

8    discussed above, the court rejects defendants' argument that the lack of reference to retaliation in

9    his prison grievances renders the claims unexhausted.  As to plaintiff's contention that he was

10   coerced into withdrawing the grievance, the documents submitted by defendants indicate that

11   plaintiff withdrew the appeal because there was no opposition to his appointment as a

12   representative on the MAC, and that plaintiff agreed not to seek re-election to the MAC until

13   September 2002.  Further, plaintiff does not provide any detail as to the alleged coercion such

14   that the court could conclude that the exhaustion requirement should be excused.  Because,

15   however, plaintiff voluntarily withdrew the relevant grievances, and because he has not presented

16   any specific evidence as to coercion, the court finds that Claim 6 is unexhausted in its entirety.

17              16.   Claim 7

18              In Claim 7, plaintiff alleges that, on October 29, 2001, and October 31, 2001,

19   various defendants "jointly caused the lawful information to be arbitrarily and capriciously

20   confiscated for no legitimate reason which served a valid penological objective."  Generally,

21   plaintiff complains of information he posted on a prisoner bulletin board being removed.  Of the

22   defendants named in Claim 7, only defendants Hogan and Warren remain.  Defendants concede

23   that the claim is exhausted as to defendant Warren, but contend that "in the absence of a claim

24   that the confiscation of his written material by Officer Hogan was retaliatory in nature, Plaintiff

25   failed to comply with the PLRA exhaustion requirement . . . ."  The court does not agree.  First,

26   as discussed above, the PLRA does not require prisoners to allege legal theories in their inmate

24

1   grievances.  Second, the procedural requirements for prison grievances set out in the applicable

2   California regulations do not require prisoners to name specific officials.  Therefore, given that

3   plaintiff submitted a grievance as to the removal of items from the bulletin board in October

4   2001, and pursued that grievance through to the final level of review – as defendants concede –

5   the court finds that Claim 7 is exhausted.

6            17.    <u>Claims 8a-d</u>

7         In Claim 8a, plaintiff alleges that on May 29, 2002 – one week after a January

8   2002 lawsuit by plaintiff was served on various defendants – plaintiff filed a grievance because

9   he was being required to have his ID card "out of his pocket and in hand" each time he entered

10   the dining facility even though state regulations only require an ID card be shown upon being

11   asked by a prison guard to do so.  In Claim 8b, plaintiff asserts that, on May 30, 2002, he was

12   forced to eat dinner while standing and locked in a small cage.  In Claim 8c, plaintiff states that,

13   on May 31, 2002, he filed another grievance, but that various defendants "committed obstruction

14   of justice by jointly causing review of the matter to be illegally impeded and otherwise conducted

15   in violation of Plaintiff's guaranteed grievance rights."  In Claim 8d, plaintiff alleges that, on

16   June 7, 2002, and June 8, 2002, he was "subject . . . to physical, verbal, & mental coercion,

17   duress, menace, & threats of retaliatory & otherwise unlawful disciplinary action for not

18   withdrawing the above grievance of 5/31/02."[11]

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24

25         [11]     It appears that this grievance was never withdrawn.  Given that plaintiff did not withdraw the May 2002 grievance despite alleged coercion to do so, plaintiff's contention that he was coerced into withdrawing the grievance discussed above in the context of Claim 6 is even

26   less tenable.

As to plaintiff's complaints regarding ID cards set forth in Claim 8a, defendants note that plaintiff filed two inmate grievances concerning this issue.  The first was granted at the first level and not pursued further.[12]  The second, was screened out as duplicative.[13]  Thus, defendants conclude plaintiff failed to exhaust his administrative remedies as to this claim.  The court does not agree.  The first grievance was essentially designated a staff complaint.  As such, once prison officials responded at the first level that appropriate action would be taken against the officers, plaintiff had no further ability to pursue the matter and it must be considered exhausted.  Therefore, Claim 8a is exhausted.

Regarding plaintiff's allegation in Claim 8b that he was required to eat  while standing in a small cage, defendants' evidence indicates that a May 31, 2002, grievance – in which plaintiff complained of both the ID issue and the eating issue – was screened out as duplicative.  Specifically, at page 207 of Exhibit A, an "Inmate/Parolee Appeals Screening" form dated June 10, 2002, states: "Currently, we are processing an appeal you submitted for this same issue on 6/3/02."  It is unclear, however, whether "this same issue" refers to the ID issue or the eating issue.  As discussed above, the ID issue was exhausted by the first grievance.  To the extent "this same issue" refers to the eating issue, and to the extent that issue is the subject of the June 3, 2002, grievance, it is possible that plaintiff exhausted the eating issue via the June 3rd grievance.  Given that defendants do not discuss the June 3rd grievance, defendants have not met their burden of establishing that the eating issue outlined in Claim 8b is unexhausted.

/ / /

/ / /

/ / /

---

[12]    The first level response indicates that "[a]ppropriate disciplinary action was taken against the officers. . . ."

[13]    In the second grievance, plaintiff also complained about being made to eat while standing in a small cage.

26

1   Turning to Claim 8d, which relates to events on June 7, 2002, and June 8, 2002,

2   defendants state that the issue is unexhausted because plaintiff did not submit any grievances

3   within 15 working days of June 8, 2002.  The court agrees and finds that plaintiff's contentions

4   that defendants thwarted his efforts to file grievances are unpersuasive.  Therefore, Claim 8d is

5   unexhausted.

6          18.     Claims 8e-f

7   Defendants do not provide the court with any specific arguments or evidence

8   concerning Claims 8e-f, in which plaintiff alleges continuing retaliation on June 9, 2002, and

9   again on July 8, 2002.  Therefore, even though defendants argue generally that all of Claim 8,

10  with the exception of a portion of Claim 8h, is unexhausted, defendants cannot meet their burden

11  of establishing that Claims 8e-f are unexhausted.[14]

12         19.     Claims 8g-h

13  In Claim 8g, plaintiff alleges that, on July 17, 2002, defendants "jointly caused a

14  convicted cop murderer . . . to be unlawfully used to further terrorize and otherwise retaliate

15  against Plaintiff after Plaintiff reported a violent knife threat [against] him on 7/15/02. . . ."  In

16  Claim 8h, plaintiff states that, on September 6, 2002, plaintiff was falsely accused of a

17  disciplinary violation "merely because he had freely expressed himself to POE from behind a

18  solid metal door of his locked cell."  Defendants concede that Claim 8h is exhausted except as to

19  the portion of the claim relating to defendant Lattimore.

20  As to Claim 8g, defendants argue that plaintiff's next inmate grievance after July

21  17, 2002, was submitted on August 18, 2002, and did not concern any of the allegations in Claim

22  8g.  The inmate referenced in Claim 8g is inmate Porter.  The August 18, 2002, grievance

23  concerns alleged harassment by inmate Woodward, not Porter, and was granted at the second

24  level and not pursued further by plaintiff.  Defendants conclude that Claim 8g is unexhausted

25

26         [14]     Though the claim is exhausted, Claim 8e is no longer before the court because all
    defendants named in that sub-claim have been dismissed.

1    because plaintiff did not submit any timely grievance concerning inmate Porter.  The court

2    agrees.

3             As to Claim 8h, defendants argue that the claim is unexhausted as to defendant

4    Lattimore's "review of the rules violation hearing documentation. . ." because plaintiff's

5    grievance "does not claim that Captain Lattimore's review of the rules violation hearing

6    documentation was retaliatory in nature."  The court rejects this reasoning and concludes that

7    plaintiff's failure to mention retaliatory motive by Lattimore in his inmate grievance does not

8    render the claim unexhausted.

9             20.    Claim 8i

10            Defendants provide no specific argument or evidence regarding Claim 8i, in

11   which plaintiff alleges that defendants obstructed review of his grievances.[15]

12            21.    Claim 8j

13            In Claim 8j, plaintiff asserts that, beginning on October 23, 2002, he was issued a

14   false rules violation report "after and because he had reported all the misconduct and violations

15   of state law committed by GUTIERREZ in adjudicating the retaliatory & otherwise illegal

16   disciplinary action above which began on 9/6/02."  Defendants' evidence indicates that plaintiff

17   submitted a grievance concerning allegedly false disciplinary reports on October 30, 2002, and

18   re-submitted the same grievance on December 11, 2002.  The first grievance was screened out as

19   procedurally defective, and the second was screened out as untimely.  Because plaintiff did not

20   re-submit the initially defective appeal within a timely manner, he failed to comply with the

21   applicable procedural requirements and, for this reason, Claim 8j is unexhausted.

22   / / /

23   / / /

24   / / /

25   _____

26   [15]    This claim is no longer before the court because all specifically named defendants
     have been dismissed.

1          22.    Claim 8k

2          Defendants do not provide any specific arguments as to Claim 8k, in which

3 plaintiff states that his attempts to submit grievances were thwarted.[16]

4          23.    Claims 8l-n

5          In Claim 8l, plaintiff alleges that, on November 6, 2002, and November 9, 2002,

6 he again suffered retaliatory disciplinary charges "for posting lawful information on a bulletin

7 board. . . ."   In Claim 8m, plaintiff alleges that, "[b]y 11/21/02, all defendants thus far named

8 herein . . . jointly caused Plaintiff's mental health to be so badly eroded because of the retaliatory

9 campaign of oppression . . . ."   In Claim 8n, plaintiff asserts that, on December 13, 2002, various

10 defendants caused him to be denied breakfast by withholding eating utensils.

11          As to Claim 8l, defendants argue the claim is unexhausted because the appeal logs

12 do not show that plaintiff filed any grievances within 15 working days of November 9, 2002,

13 concerning allegedly false disciplinary charges.  Defendants reference a grievance submitted on

14 November 18, 2002, but this grievance concerned plaintiff's claim that the appeals coordinator

15 had improperly screened out his prior grievances concerning Gutierrez.  The court agrees with

16 defendants that Claim 8l is unexhausted.  Plaintiff's argument that a grievance submitted on

17 November 1, 2001, in connection with complaints outlined in Claim 7 provided prison officials

18 sufficient opportunity to "address, resolve, and thereby prevent any future violation(s)" is

19 unpersuasive because plaintiff's November 2001 grievance could not have addressed the specific

20 instances of alleged misconduct in November 2002 which had not yet occurred.

21          As to Claim 8m, the court has previously concluded that this is not a separate

22 claim for relief, but an allegation as to plaintiff's alleged damages.  Exhaustion is not an issue as

23 to this claim.

24 _____

25     [16]    Again, this assertion strikes the court as untenable given that plaintiff clearly was
able to file numerous grievances, many of which were timely and otherwise procedurally
adequate.  In any event, this sub-claim is no longer before the court because all specifically

26 named defendants have been dismissed.

As to Claim 8n, defendants' evidence indicates that plaintiff filed an inmate grievance on December 13, 2002, which was granted at the first level. The evidence also indicates that plaintiff never appealed the matter further. Defendants conclude that the claim is unexhausted because plaintiff never appealed any further in the grievance process. The court agrees. Claim 8n is unexhausted.

24.   Claim 9a

Defendants present no specific arguments as to Claim 9a, in which plaintiff asserts that defendants intentionally contaminated his food with feces, urine, mucous, and the like in retaliation.[17]

25.   Claims 9b-c

In Claim 9b, plaintiff alleges that, on January 7, 2003, January 11, 2003, and January 15, 2003, defendants served plaintiff food that was contaminated with pubic hair, rocks, hooks, and razor blades. In Claim 9c, plaintiff states that, on January 11, 2003, defendants threatened plaintiff and other MAC members with retaliatory disciplinary action and confinement in administrative segregation "for lawfully alerting their prisoner constituents entering the dining area to the razor blade fragments just discovered in that evening's dinner entree."

Without providing much specificity, defendants contend that these claims are unexhausted. Specifically, as to Claim 9b, it appears that defendants reach this conclusion because plaintiff's grievance log does not reveal any timely grievances related to allegedly contaminated food. Defendants' evidence, however, reflects a February 28, 2003, grievance (log no. MCSP-B-03-00551) relating to contaminated food on January 11, 2003, and January 12, 2003, and improper placement in administrative segregation. This grievance was not screened out as late, but proceeded to the second level where it was denied. The grievance was also denied at the director's level. Thus, the court finds that Claim 9b is exhausted.

---

[17]   This claim is no longer before the court because all defendants specifically named have been dismissed.

1          As to Claim 9c (and claims 10f, 10m, 10o, 10r, and 10s, which will be discussed

2   separately below), defendants state: "Defendants concede that the appeal MCSP Log No. 03-

3   00551, submitted February 28, 2003, exhausts the discreet issue of whether Captain Warren and

4   Lieutenants Etheredge and Gutierrez participated in Plaintiff's February 2003, ad-seg. placement

5   and subsequent rules violation report . . . , in retaliation for Plaintiff having exercised his First

6   Amendment rights."  As discussed above, grievance no. MCSP-B-03-00551 was pursued through

7   the final level of review and, as such, exhausts Claim 9c.

8          26.    Claim 9d

9          Defendants do not provide any specific argument as to Claim 9d, in which

10   plaintiff asserts that another prisoner was improperly confined in administrative segregation to

11   prevent him from informing others that he had ingested food on January 11, 2003, which had

12   been contaminated with a razor blade fragment.[18]

13          27.    Claims 9e-f

14          In Claim 9e, plaintiff asserts that, as a result of the contaminated food, defendants

15   caused plaintiff "and many of his prisoner associates . . . to suffer such intense fear for their

16   health and safety that they refused for several days to eat any food prepared for them. . . ."[19]  In

17   Claim 9f, plaintiff alleges that, on January 13, 2003, "after the MAC chairman . . . had asked

18   Plaintiff on 1/7/03 to draft a grievance for the MAC to submit on behalf of all prisoners on

19   MCSP's 'B' facility regarding contaminated food. . .," the following occurred: (1) his cell was

20   "unlawfully ransacked . . . with several confidential documents . . . left scattered about"; and

21

22   _____

23          [18]    This "claim" cannot provide a basis for relief against defendants in this action
     because it does not relate to any alleged violation of plaintiff's right, but the rights of another
24   inmate who is not a party.  Further, the claim is no longer before the court because all defendants
     named in Claim 9d have been dismissed.

25          [19]    As with Claim 8m, this appears to be a damages allegation associated with his
     claims relating to contaminated food and not a separate claim for relief.  Thus, exhaustion is not
26   an issue as to Claim 9e.

1   (2) the referenced MAC grievance and all his typing ribbons were improperly confiscated.[20]

2          Defendants reference plaintiff's inmate grievances and contend that Claim 9f is

3   unexhausted because he did not submit any grievances relating to the January 13, 2003, cell

4   search and confiscation of property.  A review of plaintiff's grievances reflects that, on February

5   2, 2003, plaintiff submitted a grievance regarding a cell search which occurred the previous day.

6   In this grievance, plaintiff stated that his cell had been improperly searched for the third time "in

7   only twenty days," but does not reference the dates of the previous two allegedly improper

8   searches.  There is no evidence of a grievance having been filed which specifically relates to the

9   January 13, 2003, cell search which is the subject of Claim 9f, and plaintiff does not direct the

10  court's attention to any such grievance.  For this reason, the court finds that plaintiff failed to

11  exhaust the claim by providing prison officials an opportunity to address this particular cell

12  search and confiscation of property.  Plaintiff's generic argument regarding access to the

13  grievance process having been thwarted is unavailing.

14          28.   Claims 10a-j

15          In Claim 10a, plaintiff states that he was intimidated on January 17, 2003, in

16  retaliation for posting information on a prisoner bulletin board.  In Claim 10b, plaintiff asserts

17  that, on January 22, 2003, his work supervisor was "coerced against hiring him as a paid clerk."

18  In Claim 10c, plaintiff alleges that, beginning January 23, 2003, defendants "caused several

19  UNION newsletters . . . to be illegally seized from Plaintiff's associates, and several prisoners to

20  be intimidated with threats of retaliatory confinement in ad-seg and false disciplinary charges for

21  either having UNION newsletters or not agreeing to provide false information against Plaintiff,

22  / / /

23  / / /

24

25        [20]    Plaintiff also claims that another inmate – David "Hoss" Bristow – was
    unlawfully confined in administrative segregation.  As with Claim 9d, this allegation does not
26  relate to plaintiff and cannot provide a basis for liability in this case.

32

his mother, &/or MAC Vice-Chairman Bristow."[21]  In Claim 10d, plaintiff alleges that, beginning February 1, 2003, he suffered retaliatory cell searches.  In Claim 10e, plaintiff asserts that various defendants obstructed his access to the grievance process concerning the cell searches mentioned in Claim 10d.[22]  In Claim 10f, plaintiff alleges that, between February 10, 2003, and May 8, 2003, plaintiff suffered retaliatory confinement in administrative segregation "under false pretenses and adequate Due Process and Equal Protection in direct relation to . . . publicizing the food contamination of 1/7/03, 1/11/03, & 1/15/03. . . ."  In Claims 10g-h, plaintiff states that he suffered various improper conditions of confinement on the first day of his term in administrative segregation.  In Claim 10i, plaintiff alleges that, on February 17, 2003, he was "psychologically tormented over an 8-hour period of time. . . ."  In Claim 10j, plaintiff asserts that, from February 11, 2003, through February 18, 2003, he suffered additional improper conditions of confinement while in administrative segregation.

As to Claims 10a-b, in which plaintiff alleges retaliatory conduct on January 17, 2003, and January 22, 2003, defendants argue that none of plaintiff's inmate grievances submitted between February 2003 and May 2003 related to the issues outlined in these two sub-claims (i.e., material on the bulletin board and job assignments).  Upon reviewing plaintiff's grievance log and the specific grievances referenced by defendants in their motion, the court agrees.  Plaintiff's renewed argument that a November 2001 grievance put prison officials on notice of events which had not occurred yet is unpersuasive.  The court is also not persuaded by plaintiff's conclusory argument that he was thwarted from filing grievances.  Because the record does not indicate that plaintiff filed any grievances concerning the matters alleged in Claims 10a-b, and because plaintiff does not point to any, the court finds that these claims are unexhausted.

---

[21]     Claim 10c cannot provide a separate basis for relief because it does not relate to plaintiff, but to alleged harm suffered by individuals who are not parties to this action. Therefore, exhaustion of this claim is not an issue.

[22]     The court has previously concluded that plaintiff cannot state a stand-alone claim based on the prison grievance process.

1     As to Claims 10d-e, defendants state that plaintiff submitted two grievances

2   related to cell searches in February 2003.   The first was cancelled by prison officials for abuse of

3   the appeals process, and the second was screened out for failure to adequately complete the

4   inmate appeal form.  Defendants conclude that plaintiff's claims relating to the February 2003

5   cell search are unexhausted because "he did not complete the appeal process."  While the

6   evidence does in fact indicate that plaintiff's grievance was cancelled due to what was called

7   "abuse of the appeals process," it is clear that plaintiff submitted a timely grievance related to the

8   February 1, 2003, cell search.  It is also clear that plaintiff attempted on several occasions,

9   through letters written to the appeals coordinator, to have his grievance processed through the

10   successive levels of administrative review.  What is not clear is how or why prison officials

11   reached the conclusion that plaintiff had abused the process.  Defendants' evidence is not

12   illuminating on this point.  Therefore, the court finds that defendants have not met their burden of

13   establishing that plaintiff failed to exhaust his claims related to the February 1, 2003, cell search.

14     As with Claims 9c, 10m, 10o, 10r, and 10s, defendants concede Claim 10f is

15   exhausted as to "whether Captain Warren, Lieutenant Gutierrez, and Lieutenant Etheredge

16   participated in Plaintiff's February 2003 ad-seg placement and subsequent rules violation report

17   #B09/03-025, in retaliation for Plaintiff having exercised his First Amendment rights."  They do

18   not, however, provide any specific argument as to any other aspect of Claim 10f.

19     As to Claims 10g-I, in which plaintiff alleges improper conditions of confinement

20   while housed in administrative segregation in February 2003, defendants argue (as they do with

21   respect to Claim 10q, discussed below) that these claims are unexhausted because plaintiff failed

22   to mention any retaliatory motive in his grievances.  The court does not accept this argument.

23     As to Claim 10j, in which plaintiff alleges additional instances of improper

24   conditions of confinement in administrative segregation between February 11, 2003, and

25   February 18, 2003, defendants argue (as they do with respect to Claims 10a-b, discussed above)

26   that none of the grievances plaintiff submitted between February 2003 and May 2003 related to

the issue outlined in Claim 10j (i.e, conditions of confinement in February 2003).  Having

reviewed plaintiff's grievances, the court agrees and concludes that Claim 10j is unexhausted.

            29.     Claims 10k-l

           In Claim 10k, plaintiff alleges that, on February 18, 2003, he was denied required

procedural protections in the context of an administrative segregation placement hearing.  In

Claim 10l, plaintiff alleges that, the following day, he was threatened with either transfer or

indefinite confinement in the secured housing unit ("SHU") "even though he had done nothing

wrong to warrant any such adverse action."  Defendants do not offer any arguments concerning

these claims.[23]

            30.     Claim 10m

           In Claim 10m, plaintiff states that, beginning on February 20, 2003, various

defendants caused plaintiff to suffer false and retaliatory disciplinary action without due process

"in direct relation to . . . having documented, reported, and otherwise grieved not only the

previously discussed food contamination of 1/7/03, 1/11/03, & 1/15/03, but also the related

retaliation. . . ."  Defendants concede that Claim 10m is exhausted as to "whether Captain

Warren, Lieutenant Gutierrez, and Lieutenant Etheredge participated in Plaintiff's February 2003

ad-seg placement and subsequent rules violation report #B09/03-025, in retaliation for Plaintiff

having exercised his First Amendment rights."  They do not, however, present any specific

argument or evidence upon which the court could base a conclusion that Claim 10m is

unexhausted in any other respect.

/ / /

/ / /

/ / /

/ / /

---

     [23]     These claims are no longer before the court because the only specifically named
defendants have previously been dismissed.

31.   <u>Claim 10n</u>

Defendants do not provide any specific argument as to Claim 10n, in which plaintiff asserts that defendants attempted to coerce another prisoner "to falsely implicate Plaintiff in some type of wrongdoing."[24]

32.   <u>Claim 10o</u>

In Claim 10o, plaintiff alleges retaliatory misconduct by defendants during the course of a staff investigation concerning a disciplinary charge. Again, defendants concede this claim is exhausted, but only as to "whether Captain Warren, Lieutenant Gutierrez, and Lieutenant Etheredge participated in Plaintiff's February 2003 ad-seg placement and subsequent rules violation report #B09/03-025, in retaliation for Plaintiff having exercised his First Amendment rights."   However, defendants do not offer any specific argument or point to evidence which could form the basis of a finding that any portion of Claim 10o is unexhausted.

33.   <u>Claim 10p</u>

Defendants do not provide any specific argument as to Claim 10p, in which plaintiff alleges that various defendants obstructed his access to the prison grievance process.[25]

34.   <u>Claims 10q-s</u>

In Claim 10q, plaintiff alleges that, beginning February 27, 2003, "after Plaintiff was caused for at least 2 weeks to suffer the excruciatingly uncomfortable side effects of . . . illegal drugging which began around 2/11/03," various defendants "caused Plaintiff to also suffer blindingly severe withdrawal pains" while his pleas for pain medication were denied.  In Claim 10r, plaintiff states that he was subjected to retaliatory and false disciplinary actions.  In Claim 10s, plaintiff alleges that defendants obstructed review of inmate grievances.  As with Claims 9c,

---

[24]   This claim is no longer before the court because the specifically named defendants have been dismissed.

[25]   This claim is no longer before the court because the defendants named in Claim 10p have previously been dismissed from the action.

1  10f, 10m, and 10o, defendants concede that Claims 10r-s are exhausted, but only as to ""whether

2  Captain Warren, Lieutenant Gutierrez, and Lieutenant Etheredge participated in Plaintiff's

3  February 2003 ad-seg placement and subsequent rules violation report #B09/03-025, in

4  retaliation for Plaintiff having exercised his First Amendment rights."[26]  However, defendants do

5  not provide any specific argument that any other portion of Claims 10r-s are unexhausted.

6          As to Claims 10q, defendants reference an inmate grievance submitted in March

7  2003 in which plaintiff complained of having been forced to take psychotropic medication.  At

8  an interview regarding this grievance, plaintiff stated that he wanted to stop taking all involuntary

9  medication, but that he agreed to continue taking Risperdal in tapered doses.  Based on this

10  interview, plaintiff's grievance was granted.  Defendants argue that, despite plaintiff having

11  filed a grievance on the issue, "[t]his appeal . . . does not contain any claims of retaliatory

12  misconduct . . ." and conclude that, for this reason, plaintiff has not exhausted Claim 10q.  As

13  discussed above in these findings and recommendations, the court does not accept this

14  reasoning.[27]

15          35.   Claim 10t

16          Defendants do not provide any specific argument as to Claim 10t, in which

17  plaintiff contends that defendants improperly delayed review of his administrative segregation

18  placement in retaliation for his having filed a lawsuit on February 26, 2003, and for his mother

19  holding a televised anti-CDCR rally in Sacramento.[28]

20  / / /

21

22  [26]    This is puzzling as to Claim 10s, which does not concern allegedly retaliatory
   administrative segregation placement or rules violation reports, but alleged obstruction of
23  grievance review.

24  [27]    Defendants present no evidence that plaintiff's grievance concerning involuntary
   medication was not pursued to the final level of review.  Therefore, the court cannot conclude
25  that the claim is unexhausted on this basis.

26  [28]    This claim is no longer before the court because all specifically named defendants
   have previously been dismissed.

37

36.   Claim 10u

In Claim 10u, plaintiff alleges that he and his fiancee were denied visitation on March 15, 2003, March 16, 2003, and April 19, 2003, in retaliation for plaintiff having filed a lawsuit against prison officials on February 26, 2003.  Plaintiff also states that he was "verbally assaulted and battered by FOWLER on 3/16/03."  Defendants state that, while plaintiff filed a grievance on March 17, 2003, concerning visitation, plaintiff made no reference to retaliatory motive.  Defendants also state that none of plaintiff's other grievances submitted in March and April 2003 "describe the deprivation of visiting time or a physical and verbal assault and battery."  For these reasons, defendants conclude Claim 10u is unexhausted.

A review of the March 17, 2003, grievance reflects that plaintiff complained of non-contact visitation (i.e., not being allowed to hold hands), not of the complete denial of any kind of visitation, as alleged in Claim 10u.  Further, because this grievance was submitted in March 2003, it could not put prison officials on notice of his claim of denial of visitation on April 19, 2003.  As to the other grievances submitted by plaintiff in March and April 2003, defendants are correct that plaintiff did not complain of the specific events of non-visitation and/or assault and battery alleged in Claim 10u.  For these reasons, the court agrees with defendants that Claim 10u is unexhausted.

37.   Claim 10v

In Claim 10v, plaintiff asserts that, beginning on April 20, 2003, personal letters and photographs were improperly confiscated.  Defendants argue that, because plaintiff's grievance concerning the confiscation of personal property in April 2003 references officers Carrillo and Lincoln, but the only remaining defendants named in this claim are defendants Lattimore and Stewart, plaintiff failed to established the requisite "causal link between the actions of Captain Lattimore or Officer Stewart and the claimed deprivation."  The court concludes that this argument is not appropriate at this time.  The time to make such an argument would have been in the context of defendants' prior Rule 12(b)(6) motion.  The instant

1   unenumerated 12(b) motion was permitted by special order for the sole purpose of addressing

2   exhaustion, not failure to state a claim due to lack of causal link.

3          Nonetheless, the court concludes that this claim is unexhausted.  As discussed

4   above, one of the primary purposes of the exhaustion requirement is to provide prison officials

5   with an opportunity to address the inmate's concern.  Here, the evidence submitted by defendants

6   makes it clear that plaintiff's grievance referenced officers Carrillo and Lincoln, both of whom

7   have previously been dismissed.[29]  The grievance does not mention defendants Stewart or

8   Lattimore with respect to improper confiscation of personal property in April 2003.  Therefore,

9   plaintiff's grievance could not have provided prison officials any opportunity to address the

10  alleged staff misconduct of defendants Stewart and Lattimore and, for this reason, did not serve

11  to exhaust Claim 10v.

12          38.   Claim 10w

13          Defendants do not provide any specific argument as to Claim 10w, in which

14  plaintiff alleges that his requests for access to stored legal property was ignored or denied.

15          39.   Claim 10x

16          In Claim 10x, plaintiff asserts that, on April 29, 2003, he suffered a retaliatory

17  transfer to a higher security prison, where he was denied "expensive items of personal property,"

18  as well as "many of the liberties and privileges he had earned his first several years in prison."

19  Defendants reference a number of grievances submitted by plaintiff following his transfer, but

20  argue that none exhausts Claim 10x because plaintiff did not mention any retaliatory motive

21  / / /

22  / / /

23

24          [29]    Lincoln and Carrillo were dismissed for failure to state a claim because plaintiff
    failed to allege an adequate causal connection between their conduct and retaliation.  In the
25  context of Claim 10v, while plaintiff alleges that these individuals improperly confiscated
    personal property, he does not allege that Lincoln or Carrillo did so because plaintiff had engaged
26  in protected activity.

1    behind the transfer.[30]  As discussed above, the court rejects this argument.

2           40.    Claim 11

3           Though defendants do not concede that any portion of Claim 11 is exhausted,

4    defendants do not provide the court with any specific argument as to why the claim is

5    unexhausted.[31]

6           41.    Claim 12

7           In Claim 12a, plaintiff alleges that, "[b]eginning 7/8/03, [various defendants]

8    jointly caused Plaintiff to suffer retaliatory disciplinary action for lawfully expressing himself

9    freely in a confidential grievance letter to HANSEN on 6/19/03."  In Claim 12b, plaintiff states

10   that he suffered retaliatory disciplinary action due to a July 30, 2003, letter.  Defendants concede

11   these claims are exhausted as against defendants Gutierrez and Lattimore, who are the only

12   remaining defendants named in Claims 12a-b.  In Claim 12c, plaintiff alleges that, on September

13   10, 2003, and September 15, 2003, defendants improperly opened incoming legal mail from

14   plaintiff's attorney.  While defendants do not concede that Claim 12c is exhausted, they provide

15   the court with no specific argument as to non-exhaustion.[32]

16   **B.    Defendant Whittle's Motion for Judgment on the Pleadings**

17          Defendant Whittle argues that the claims against him are time-barred.  The court

18   agrees for the reasons outlined in the February 21, 2008, findings and recommendations.

19   Specifically, the court previously concluded that any retaliation claims relating to conduct before

20   December 12, 2001, are time-barred unless plaintiff alleges continuing retaliatory conduct after

21   this date.  Defendant Whittle correctly notes that the only specific allegations as to him appear in

---

22,23        [30]    Defendants do not argue that any of these appeals were not pursued through to the final level of review.

24,25        [31]    This claim, however, is no longer before the court because all defendants named have previously been dismissed.

26           [32]    Claim 12c, however, is no longer before the court because all specifically named defendants have been dismissed.

40

Claim 2g and that the court previously concluded that all of Claim 2 alleges conduct prior to December 12, 2001. Therefore, any claims against defendant Whittle are time-barred because plaintiff does not allege any specific conduct by this defendant after December 12, 2001.

## IV.  CONCLUSION

In summary, the court concludes as follows:

1.  For the reasons discussed above, the court finds that Claim 1f, Claim 2 (in its entirety), Claims 3a, 3e-f, Claim 4 (in its entirety), Claim 5b, Claim 6 (in its entirety), Claims 8d, 8g, 8j, 8l, and 8n, Claim 9f, Claims 10a-b, 10j, and 10u-v are unexhausted and should be dismissed;

2.  Any claims against defendant Whittle are time-barred and he should be dismissed;

3.  Claims 3d and 3h, Claims 8e, 8i, and 8k, Claim 9d, Claims 10k-l, 10n, 10p, 10t, Claim 11 (in its entirety), and Claim 12c are no longer before the court because all defendants specifically named in these claims have previously been dismissed from the action;

4.  Claim 8m, Claims 9e, and Claim 10c cannot provide a separate basis for liability because they relate to harm allegedly suffered by someone other than plaintiff or they are statements of plaintiff's alleged damages resulting from conduct outlined elsewhere in the complaint;

5.  Ali, Fowler, Mesa, Nelson, O'Connor, Stewart, and Vasquez should be dismissed as defendants to this action because they are not named anywhere in the surviving liability claims; and

6.  This action should proceed against defendants C. Brown, Danziger, Etheredge, Gunning, Gutierrez, Hein, Hogan, Kaiser, Kanipe, Keeland, King, Lattimore, Marshall, Murray, Poe, Sauceda, Smith, Warren, and Warvarovski only as to Claims 1a-e and 1g (against defendants Kaiser and Marshall), Claims 3b-c and 3g (against defendant Kaiser), Claims 5a and 5c-d (against defendants C. Brown and Warren), Claim 7 (against defendants Hogan and Warren), Claims 8a-c, 8f, and 8h (against defendants Gunning, Gutierrez, Kaiser, Lattimore, Murray, Poe, Smith, and Warren), Claims 9a-c (against defendants Etheredge, Gutierrez, and Warren), Claims 10d-I, 10m, 10o, 10q-s, and 10w-x (against defendants Danziger,  Etheredge, Gutierrez, Hein, Hogan, Keeland, Lattimore, Sauceda, Warren, and Warvarovski), and Claims 12a-b (against defendants Gutierrez and Lattimore).

/ / /

/ / /

Based on the foregoing, the undersigned recommends that:

1.      Defendants' motion to dismiss (Doc. 175) be granted in part and denied in part as outlined above;

2.      Defendant Whittle's motion for judgment on the pleadings (Doc. 177) be granted;

3.      Claim 1f, Claim 2 (in its entirety), Claims 3a, 3e-f, Claim 4 (in its entirety), Claim 5b, Claim 6 (in its entirety), Claims 8d, 8g, 8j, 8l, and 8n, Claim 9f, Claims 10a-b, 10j, and 10u-v be dismissed as unexhausted; and

4.      Ali, Fowler, Mesa, Nelson, O'Connor, Stewart, Vasquez, and Whittle be dismissed as defendants to this action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 20, 2009

_Craig M. Kellison_
_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

42