IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC CHARLES RODNEY KNAPP, | No. CIV S-05-2520-FCD-CMK-P |
| Plaintiff, | |
| vs. | FURTHER FINDINGS RECOMMENDATIONS |
| RODERICK HICKMAN, et al., | |
| Defendants. | |
| _____/ | |

Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. On September 2, 2010, the undersigned issued findings and recommendations (Doc. 224) that the defendants' motion for summary judgment (Doc. 201) be granted in full. On April 7, 2011, those findings and recommendations were adopted by the court in part (Doc. 235). The court declined to adopt the recommendations as to claims 9, and 10m, o, and x, and those claims were referred back to the undersigned for further consideration. Prior to issuing further findings and recommendations, the undersigned allowed the parties an opportunity to file further briefs on the remaining issues in light of the District Judge's decision. Those briefs have now been filed (Docs. 237, 238).

A.   **PRIOR FINDINGS AND RECOMMENDATIONS**

The background of this case, the undisputed facts, and the evidence, were set forth in the prior findings and recommendations. It is unnecessary to repeat them here. In the prior findings and recommendations, the undersigned set forth the following as to the remaining four

1

claims/subclaims:

**6.     Claim 9**

The defendants named in the Supporting Allegations (Counts) below then deprived Plaintiff and his associates further of secured rights, privileges, and immunities by causing the campaign of retaliatory oppression alleged above at Claims 1-8 to continue being perpetrated against them as follows in direct relation to their documenting, reporting, publicizing though UNION's Internet web site (1union1.com), and otherwise petitioning for redress of the unlawful events, circumstances, and conditions alleged in Claims 1-8 above and in the Supporting Allegations (Counts) below which occurred after and because Plaintiff and his prisoner associates petitioned for redress of their food being repeatedly defiled by other prisoners.

9b:     On 1/7/03, 1/11/03 & 1/15/03, ETHEREDGE, . . . GUTIERREZ . . . caused Plaintiff and his prisoner associates to be served food which prisoners on MCSP's "C" facility had contaminated with what was reported, identified, &/or said to be, respectively, "pubic hairs" & at least one rock-like object, fragmented razor blades, & at least one hook-shaped length of wire embedded within bite-size meat.

9c:     On 1/11/03, . . . GUTIERREZ . . . caused several MAC members (see above, Claims 4 & 6) to be unlawfully threatened by GUTIERREZ with retaliatory disciplinary action and confinement in ad-seg for lawfully alerting their prisoner constituents entering the dining area to the razor blade fragments just discovered in that evening's dinner entree.

Here, Plaintiff's retaliation claims are again unclear. To the extent Plaintiff is claiming defendant Gutierrez threatened MAC members with disciplinary action, he has been denied third party standing to raise issues related to other prisoners. In support of his claims, Plaintiff again submitted his journal entries. In his journal entry for January 11, 2003, the day Plaintiff alleges defendant Gutierrez made threats, he states that he heard of the threats from MAC members, not that Gutierrez made the threats directly to Plaintiff. (Pl. Ex B at 558). There is nothing to support an interpretation of this claim that defendant Gutierrez threatened Plaintiff. Therefore, Claim 9 does not appear to include any retaliation claim.

In addition, as discussed below, defendants argue that the investigation into the alleged food contamination determined that it

was Plaintiff and another inmate who were contaminating the food, and trying to incite other prisoners to revolt in order to transfer the food preparation duties to Facility B instead of Facility C where the kitchen facilities were. Therefore, any threat or actual disciplinary action was based on a legitimate penological goal, and Plaintiff was not actually engaged in protected activity. In support of this argument, defendants submit the investigation report, including the confidential statement reports, and Plaintiff's disciplinary proceedings wherein he was found guilty of the conspiracy to contaminate the food. Plaintiff contends that the investigation and report resulting therefrom were falsified. However, he fails to support these contentions with any evidence, such as a decision overturing the guilty disposition.

Therefore, the undersigned finds no retaliation claim remains in Claim 9. Even if one could be construed therein, Defendants provide evidence supporting their contention that the response to the contaminated food was a legitimate penological goal, and Plaintiff fails to provide any evidence to the contrary. Accordingly, defendant's summary judgment motion should be granted as to Claim 9.

**7.     Claim 10**

The defendants named in the Supporting Allegations (Counts) below then deprived Plaintiff and his associates further of secured rights, privileges, and immunities by causing the campaign of retaliatory oppression alleged above at Claims 1-9 to not merely continue being perpetrated against them but rather escalate and intensify as follows in direct relation to their documenting, reporting, publicizing through UNION's Internet web site (1union1.com), and otherwise petitioning for redress of the unlawful events, circumstances, and conditions alleged in Claims 1-9 above and in the Supporting Allegations (Counts) below which occurred after and because Plaintiff and his associates documented, reported, publicized through UNION, and otherwise grieved the recent food contaminations and related deliberate indifference, endangerment, and retaliatory acts alleged above at Claim 9.

. . .

10m:    Beginning 2/20/03, ETHEREDGE, . . . GUTIERREZ, . . . HOGAN, . . . LATTIMORE, POE, . . . WARREN . . . jointly caused Plaintiff and MAC Vice Chairman Bristow (see above, Counts 9f &10c) to suffer retaliatory & false disciplinary action which deprived them of rights and liberty without adequate Due Process and Equal Protection in direct retaliation to their having documented, reported, and otherwise grieved not only the previously discussed food contamination of 1/7/03,

|   |      |                                                                                                                                                                                                                                                                                                                                                                              |
|---|------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|   |      | 1/11/03, & 1/15/03, but also the related retaliation they and their prisoner associates had suffered as a result.                                                                                                                                                                                                                                                            |
|   | 10o: | During the "investigation" supposedly conducted on Plaintiff's behalf by an assigned guard, ETHEREDGE, . . . GUTIERREZ, . . . HOGAN, . . . LATTIMORE, POE, . . . WARREN, .. . . jointly caused Plaintiff's requested prisoner witnesses to be threatened, intimidated, & otherwise prevented from answering discovery questions asked by Plaintiff through the assigned guard. |
|   |      | . . .                                                                                                                                                                                                                                                                                                                                                                        |
|   | 10x: | On 4/29/03, ETHEREDGE, . . . GUTIERREZ, . . . LATTIMORE, . . . WARREN . . . caused Plaintiff to suffer retaliatory transfer to a higher-security prison where he was put in ad-seg for 9 days and then deprived of several expensive items of personal property allowed at MCSP, as well as many of the liberties and privileges he had earned his first several years in prison before being transferred to MCSP in 1999 to facilitate his mental condition & prescribed needs as previously stated at ¶ 1 of this Section E. |

Here Plaintiff argues that he suffered from several retaliatory acts because he reported contaminated food. As mentioned above, the defendants completed an investigation in to the alleged food contamination and determined it was Plaintiff and another inmate who conspired together to contaminate the food in an attempt to have the food preparation responsibilities transferred from Facility C to Facility B. While Plaintiff contends this investigation was falsified, he has not provided any support for that position. Defendants, however, have provided the investigation and hearing documentation which support the findings. (See Def. Ex. A at 111-39).

However, to the extent there are retaliatory claims raised in Claim 10, the undersigned will address the sub-claims separately. Plaintiff's claims break down into several categories: cell search; impeding grievances; placement in administrative segregation; false disciplinary; treatment while in administrative segregation; and transfer.

. . .

Claim 10m,o: Here, Plaintiff contends he suffered false disciplinary action regarding the conspiracy to contaminate the food, and that the investigation therein was interfered with by threatening and preventing witnesses from answering his questions. Defendants contend that following the investigation and hearing, Plaintiff was found guilty, thus any retaliation claim is defeated by that finding. In addition, the investigation was thorough and

4

complete, with no interference with the witnesses, and therefore no adverse action to support a retaliation claim.[1] However, to the extent Plaintiff claims the "confidential" witness statements supporting the disciplinary action were coerced, he again fails to provide any evidence to support this position. While he makes reference to other inmates informing him that they gave false statements to the investigator based on fear of the officers, this "evidence" is contained in his journal entries and inmate appeals. (See, i.e., Pl. Ex. B. at 586, 620, 645). He does not provide any direct evidence such as declarations from the inmates themselves.[2]

In relation to claim 10m, as defendants argue, Plaintiff's claim of retaliation is defeated by the finding that he was guilty of the charges. Defendants have shown their actions were motivated by a legitimate penological interest, that of preserving safety, security, order and discipline in the institution. The burden then shifts to Plaintiff to show a motivation other than a legitimate penological interest, which he fails to do. Plaintiff provides no evidence supporting his argument that the charges were false, such as a court granting a habeas petition overturning the guilty finding. Thus, the undersigned finds summary judgment is appropriate as to claim 10m.

Similarly, as to claim 10o, the defendants have provided a copy of the complete investigation, including the questions and answers of Plaintiff's inmate witnesses, and statements that some potential witnesses were unwilling to testify. Although there is evidence that some of Plaintiff's questions were not allowed, and some of the witnesses refused to cooperate, Plaintiff fails to meet his burden that the unwilling witnesses were motivated out of fear due to threats from the defendants. As such, there is no showing that Plaintiff suffered from an adverse action to support his retaliation claim, and summary judgment is again appropriate. . . .

Claim 10x: Here, Plaintiff contends the defendants caused him to suffer an adverse transfer to a higher security prison. Plaintiff does not articulate involvement in any specific protected activity linked to this adverse transfer.

---

[1] Plaintiff again fails to address claim 10m in his opposition to the motion. As to claim 10o, the citations to disputed facts are incorrect. The citations he provides have to do with claim 10d only and are irrelevant to this claim.

[2] At least not that the court has been successful in discovering. If there are some declarations within the 1500 or so pages of documents Plaintiff submitted as "evidence" in support of his claims, the court was unable to locate them, nor does Plaintiff specifically reference any.

The undisputed facts show that Plaintiff was transferred from MCSP to California State Prison - Sacramento (CSP-Sac) on April 29, 2003. Prior to the transfer, Plaintiff wrote to Warden Knowles indicating he did not want to be transferred, and that he could peacefully co-exist with all inmates on Facility B. The decision of Plaintiff's future placement would be determined by the interdisciplinary treatment team and the institutional classification committee (ICC) following the adjudication of the RVRs.

Defendants argue that the decision whether or not to transfer Plaintiff to another institution was made by a committee based on his custody and security level, recent disciplinary history, and enemy concerns. In support of this position, the defendants have provided declarations asserting as much, as well as citations to the decision to retain Plaintiff in ad-seg (Def. Ex. A 141), documenting Plaintiff's disciplinary proceedings and enemy concerns, and to a memorandum written to Plaintiff by Warden Knowles indicating the same (Def. Ex. A 185).

Plaintiff acknowledges his placement is determined by the ICC, but argues that none of the defendants have personal knowledge of what criteria the ICC uses to determine proper placement. (See Doc. 210 at 48-49). He does not, however, respond to the claims in his opposition to the summary judgment motion. Plaintiff therefore fails to support his claims that defendants Etheredge, Gutierrez, Lattimore, and/or Warren were responsible for the decision to transfer Plaintiff to another institution. To the extent he argues the transfer was due to the false disciplinary proceedings which these defendants were responsible for, as discussed above, Plaintiff fails to support those allegations as well. Plaintiff was found guilty in the prison disciplinary proceedings, and has provided no proof that the findings have been reversed. Therefore, his claim that the transfer to another facility was done in retaliation is unsupported.

Accordingly, the undersigned finds it is appropriate to grant Defendants' summary judgment motion.

B.   **DISTRICT JUDGE ORDER**

In the order adopting in part the undersigned prior findings and recommendations, the District Judge stated as follows:

Having reviewed the findings and recommendations and the parties' filings, and good cause occurring, the court declines to adopt the findings and recommendations as to claims 9 and 10 m, o and x. The findings and recommendations appear to rely on the rationale of *Heck v. Humphrey*, 512 U.S. 477 (1994) in deciding

> those claims, but do not discuss the other cases that discuss application of the *Heck* doctrine to retaliation claims.

The District Judge therefore declined to adopt the findings and recommendations as to claims 9 and 10 m, o and x and referred that portion of the summary judgment back to the undersigned for further consideration.

## C.    SUPPLEMENTAL BRIEFS

Plaintiff argues in his supplemental brief that the favorable termination rule does not apply to claims of First Amendment retaliation. Plaintiff relies on the Ninth Circuit decision in Ramirez v. Galaza, 334 F.3d 850 (9th Cir. 2003) for the holding that the favorable termination rules does not apply where the length of a prisoner's confinement is not at issue.

Defendants argue the opposite, that because a finding in plaintiff's favor would necessarily imply the invalidity of the prison disciplinary proceeding, the favorable termination rule does apply to this case. In support of their position, defendants cite to a decision out of this court, Cohea v. Salter, 2009 WL 3128949 *4 (E.D. Cal 2009) (involving a retaliation claim for alleged false disciplinary proceedings wherein the plaintiff was assessed loss of good time credits).

## D.    DISCUSSION

The undersigned finds that the favorable termination rule, as set forth in Heck v. Humphrey, 512 U.S. 477 (1994), and Edwards v. Balisok, 520 U.S. 641 (1997) is not applicable to this action. Plaintiff was not assessed with the loss of good time credits for the prison disciplinary action at issue in these remaining claims. Rather, he was assessed with a suspended secured housing unit term. Thus, while these proceedings do challenge the validity of the underlying disciplinary action, as plaintiff claims they were false charges, such a challenge relates only to the conditions of confinement, and does not affect the overall length of plaintiff's confinement. See Ramirez v. Galaza, 334 F.3d 850, 857 (9th Cir. 2003). It therefore is not appropriate to dismiss these claims as barred.

However, the undersigned did not rely on the favorable termination rule in the prior findings and recommendations.  This case is not a direct challenge to the disciplinary proceedings, but is based on retaliation claims.  Plaintiff claims the prison disciplinary proceeding was based on false charges, and was done in retaliation.  As set forth in the prior findings and recommendations, if a retaliation claim could be construed from Claims 9 and 10 m, o or x, plaintiff fails to support his claim with any evidence.

In order to state a claim for retaliation, a prisoner must establish the following: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes v. Robinson, 408 F.3d 559, 568-69 (9th Cir. 2005).

Reading plaintiff's complaint broadly, and in the light most favorable to him, plaintiff alleges the disciplinary proceedings were an adverse action.  The undersigned agrees that disciplinary proceedings generally raise to the level of an adverse action.  Plaintiff's claim of engagement in protected conduct is more questionable, but he argues and provides some evidence relating to his complaints and "petitions for redress" relating to food contamination.  This may satisfy the second requirement for a retaliation claim.  However, plaintiff's claim fails as to the fourth requirement, that the adverse action did not serve a legitimate penological purpose.  As discussed in the prior findings and recommendations, defendants provided evidence that their actions in bringing disciplinary charges and proceedings relating to plaintiff's role in the contaminated food conspiracy, were based on a legitimate penological interest.  Having made such a showing, the burden shifts to plaintiff to show a motivation other than a legitimate penological interest.  Plaintiff provides no evidence to support his claim that the witnesses were tampered with, or that the charges were false.  As an example of evidence which could support such a showing, the undersigned stated plaintiff has not provided evidence that the disciplinary proceedings have been overturned through any available means, or provided the court with any

declaration from the inmates he claims provided false and coerced statements. Such a finding was not intended to be a finding that plaintiff's claims are barred by the favorable termination rule, but rather as a finding that there is no evidence provided to support plaintiff's claim. If plaintiff had the disciplinary charges reversed, or determined to be false, that could certainly support his claim that the charges were retaliatory in nature and served no legitimate penological interest.

Given that the burden shifted to plaintiff to show some motivation other than a legitimate penological interest in bring the disciplinary charges against him, the undersigned finds plaintiff fails to meet that burden. Plaintiff provides no evidence to support his claim that the charges were false. He therefore fails to establish the existence of an element essential to that claim. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). As stated in the prior findings and recommendations, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. In this case, plaintiff fails to establish the existence of a factual dispute. He fails to submit any evidence to support his contention that the disciplinary charges were false, or that the testimony relied on was fraudulent or coerced, and therefore fails to meet his burden of showing a motivation for the disciplinary proceedings other than a legitimate penological interest.

///

///

E.   CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Defendants' motion for summary judgment (Doc. 201) be granted as to the remaining claims: Claim 9, 10m, o, and x; and

2. The Clerk of the Court be directed to enter judgment and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


DATED:  July 6, 2011

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE